**In re Appeal of Vincent and June SARDI, et al.**

[751 A.2d 772]

No. 99-069

March 17, 2000. Neighbors challenge the environmental court's decision that upheld a conditional use permit granted to applicant Trailside Ski Club of New Jersey, Inc. They contend that the proposed facility is a private club, rather than a lodge, and, therefore, applicant should not be allowed to use the site as proposed. They also argue that, if the facility is a lodge, it cannot comply with the requirements of the conditional use permit. We affirm.

Applicant is a nonprofit New Jersey corporation established in 1964 to foster and encourage skiing. Since that time, its members have traveled to Vermont to ski and have rented various overnight accommodations in the Sugarbush area. In January 1997, applicant purchased an undeveloped 3.4 acre lot in a Rural Residential District (R-2) in Warren, Vermont. Applicant's goal is to create overnight accommodations for its members. The proposed facility will be primarily used on weekends during the ski season. Neighbors are a group of individuals concerned that their nearby properties will be adversely affected by applicant's proposed development and use of the property.

In April 1997, applicant applied for a permit to build an eight-bedroom, single-family house. The zoning administrator denied the application and responded that the proposed use more appropriately fell under the definition of a ski lodge, thus requiring a conditional use permit. Applicant revised its application and obtained site plan approval from the planning commission and a conditional use permit from the zoning board of adjustment. Neighbors sought review of both the site plan approval and the conditional use permit from the environmental court. The court first determined that the proposed facility was appropriately classified as a lodge and granted summary judgment to applicant. Following a de novo hearing on the merits of the application, the court granted site plan approval subject to certain requirements such as driveway maintenance and vegetated buffer zones, but denied conditional use approval due to the inadequacy of the proposed septic system. At a reconsideration hearing, the environmental court reviewed the septic and well system design and granted the conditional use approval with additional conditions imposed relating to the septic system.

Our review of environmental court decisions is deferential. See *Badger v. Town of Ferrisburgh*, 168 Vt. 37, 39, 712 A.2d 911, 913 (1998). We defer to the environmental court's interpretation of a zoning ordinance unless it is clearly erroneous, arbitrary, or capricious. See *id.*

---

The environmental court considered two issues. The threshold issue was whether the proposed facility should be classified as a lodge or a private club under the Warren zoning bylaws. This issue is dispositive because private clubs are not allowed in R-2 districts, while lodges are a conditional use. Once the court determined that the facility was properly classified as a lodge, the second issue was whether the proposed project complied with all of the conditional use requirements.

In considering the proper classification, the court found that the proposed facility fit the definition of a lodge. The Warren zoning bylaws define a lodge as:

> A building or group of associated buildings containing up to ten (10) bedrooms for occupancy by transients on a short-term basis of less than one month average, which may offer dining facilities for the overnight guests of the lodge only.

Warren, Vt., Zoning By-Laws art. VII, § 1 (March 1996). A private club is defined as:

> A corporation, organization, association or group of individuals existing for fraternal, social, recreational or educational purposes, for cultural enrichment or to further the purposes of agriculture, which owns, occupies, or uses certain specified premises, which is not organized or operated for profit, and the benefits of which are available primarily to members only.

*Id.*

Because the proposed facility comprised an eight-bedroom building to be used by applicant's members for weekend trips to Vermont and its dining facility could only be used by applicant's members, the court decided that the facility fell under the definition of a lodge. The court reasoned that the term "private club" should be used to encompass those projects that do not fall into one of the other zoning categories.

On appeal, neighbors argue that the court failed to properly interpret the zoning bylaws, and that the bylaws clearly establish that applicant's building should be classified as a private club. Neighbors also contend that even if applicant's facility could be classified as both a lodge and a private club, the private club is the primary use due to the fact that only members may be overnight visitors. In other words, their theories are based on the idea that applicant should not be allowed to create a lodge because of its private-membership status. This theory would require us to construe the zoning ordinance as permitting regulation of property based solely on the ownership rather than the use of the land. This result is inconsistent with the authority that the Legislature has granted to municipalities. See 24 V.S.A. § 4401; *Vermont Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992). The Legislature has authorized municipalities to regulate the following:

> (A) Specific uses of land, water courses and other bodies of water;
>
> (B) Dimensions, location, erection, construction, repair, maintenance, alteration, razing, removal and use of structures;
>
> (C) Areas and dimensions of land and bodies of water to be occupied by uses and structures, as well as areas, courts, yards and other open spaces and distances to be left unoccupied by uses and structures; [and]
>
> (D) Density of population and intensity of use.

24 V.S.A. § 4401(b)(1). This enumeration of powers does not rely on the identity of

the owner. Instead, it deals only with the use of such areas. The primary purpose of zoning is to facilitate the orderly development of communities by confining particular uses to defined areas. See *Badger*, 168 Vt. at 39, 712 A.2d at 913. The fact that the facility may also be classified as a private club does not affect the actual use of the property, which will be as a lodge. Therefore, the environmental court's decision was not clearly erroneous.

We next consider whether the proposed facility complies with the requirements of the conditional use permit. Neighbors argue that the court erred: (1) in finding that the character of the area would not be adversely affected; (2) in finding that the water and waste disposal system would be adequate; (3) in finding that traffic in the area would not be adversely affected; and (4) by imposing permit conditions that are illusory. We consider each of these arguments in turn.

Neighbors first maintain that the court considered too large an area in determining whether the character of the area would be adversely affected by the proposed facility. Neighbors argue that the court should have considered only abutting properties and those properties that share the private right-of-way. Apparently, neighbors believe that only these properties would be affected. Only four parties to this action own property that either abuts applicant's land or shares the right-of-way. We note that, under this theory, five of the nine parties no longer have an interest in this action because their property will be unaffected. Neighbors cite *In re Gaboriault*, 167 Vt. 583, 585, 704 A.2d 1163, 1165 (1997) (mem.), for the proposition that the court should consider only the immediately-surrounding area. They misinterpret our holding in that case. The trial court in *Gaboriault* found that a neighboring residential community would be affected by the parking lot, and the appellants argued that a larger area should be considered. See *id.*

We did not set a specific land measurement to be used in cases considering adverse impacts. Rather than resort to a rigid definition of size, we held that the court was required by regulation to consider the character of the "area affected." *Id.*

In the instant case, the court discussed the abutting properties, as well as the larger area. The court noted the quiet, residential nature of the immediate neighborhood, but appropriately acknowledged that the Warren area is heavily influenced by ski tourism. The court included two provisions in its final order designed to ensure that the lodge does not adversely affect the nearby single-family residences. The first is that adequate vegetated buffers be maintained on two sides of the property, and the second is that the property not be used for outdoor events involving amplified music or the consumption of alcohol. Neighbors have failed to show that, given these conditions, there will be any adverse effect, regardless of the area considered. There was no error.

Neighbors next argue that the water and wastewater disposal unit would be inadequate to serve a thirty-two person facility. They first point to the fact that the issue of whether the facility was a lodge or a private club had not yet been determined. They maintain that there is nothing in the permit as issued by the Vermont Agency of Natural Resources to indicate that the permit was for a lodge and not a private club or that applicant proved the wastewater-capacity figure that would be appropriate to each use. This argument is meritless since private clubs are not a permitted use in R-2 districts; therefore, the state could not have issued a permit for such use. Neighbors also argue that the court improperly allowed the admission of a post-trial affidavit at the reconsideration hearing and that applicant failed to prove that the 1,440 gallons of sewage per day would be

626

adequate for a thirty-two person building. The court originally denied the conditional use permit because, in looking at the design standards, it found nothing to indicate an assumption of four adults per each of the eight bedrooms. After a reconsideration hearing, the court admitted that in reviewing the permit issued by the State of Vermont, it had overlooked the introductory language, which referred to the capacity as thirty-two persons in eight bedrooms. The court also acknowledged that it would be improper to consider any evidence propounded by the affidavit. Based, therefore, on previously submitted exhibits and oral arguments at the reconsideration hearing, the court determined that the systems as designed would be adequate. We are reluctant to substitute our own judgment for that of the experience and expertise of a designated agency. Cf. *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 112-13, 666 A.2d 1170, 1172 (1995) ("Absent a compelling indication that an agency has misinterpreted the statute it has been charged to execute, we will defer to the agency's judgment.").

Neighbors next contend that the environmental court erred in concluding that traffic in the area would not be adversely affected. They argue that applicant's 200 members could desire access to the facility at the same time, which would adversely affect the traffic pattern on the dirt lane right-of-way. The court found that the proposed use would involve no more than twelve vehicles, and thus would not adversely impact the traffic. The record shows that the proposed facility has parking space for only twelve vehicles and sleeping accommodations for only thirty-two individuals. Neighbors' fears that over 200 members will attempt to make their way over the dirt lane on the same weekend are not credible.

Neighbors' final argument is that the environmental court would be unable to enforce several of the conditional use permit conditions and the conditions are therefore illusory. Specifically, they contend that it would be impossible for the court to determine if the facility exceeded its maximum wastewater capacity or to police the requirement that all cars traversing the private road are equipped with snow tires. Like the conditions we upheld in *Robinson*, "[t]he conditions are not vague; they are unqualified and definite." *In re Robinson*, 156 Vt. 199, 202, 591 A.2d 61, 62 (1991). They specifically state that a maximum of 1,440 gallons of wastewater per day may be disposed of into the septic system and that all cars using the property in winter or while snow is present shall be equipped with snow tires. Further, the conditions are enforceable in the same way that all other permit conditions dealing with water and private roads are enforceable. See *id.* at 202, 591 A.2d at 62-63. State agents are empowered to monitor compliance with regulations and permits. See 10 V.S.A. § 8005. Any violation of the requirements set forth in the conditional use permit would constitute a violation of the zoning ordinance. See *Robinson*, 156 Vt. at 202, 591 A.2d at 62-63. The zoning administrator is authorized to enforce zoning bylaws by appropriate actions. See 24 V.S.A. § 4444. In addition, interested persons, such as neighbors, may appeal to the board of adjustment in the event the administrator fails to act on their complaints. See *id.* § 4472(a). Neighbors, therefore, have failed to prove that the environmental court's imposition of conditional use permit conditions was clearly erroneous.

*Affirmed.*