STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

Southern Vermont Beagle Club          {          Docket No. 142-9-11 Vtec

## Decision on the Merits

On appeal is a decision by the Town of Shaftsbury Development Review Board (DRB) granting Conditional Use Approval and Site Plan Approval to the Southern Vermont Beagle Club, Inc. (SVBC or Applicant) to establish and operate a beagle club off East Road in Shaftsbury, Vermont. The Court conducted a site visit on August 30, 2012 at the subject property, located at 1988 East Road, immediately followed by a two day merits hearing on August 30 and 31, 2012 at the Bennington Civil Division courthouse.

Appearing at the site visit and trial were Appellants Thomas and Jayne Outwater (Appellants) and their lawyer Peter Holden, Esq. Also present were SVBC representative Steven Peckham and SVBC's lawyer, K. James Malady, III, Esq. Thomas J. Dailey, Esq., representing the Property owner, Estate of Robert Bucknall, also participated in the site visit and trial. Although the Town of Shaftsbury (Town) appeared and participated in the pre-trial phases of this matter, neither the Town nor its lawyer, Robert E. Woolmington, Esq., attended the site visit or participated in the merits hearing.

Appellants raise seven questions for the Court's review. At the beginning of the trial, we addressed Appellant's statement of questions (Question) to ensure all parties agreed to the issues before the Court. Questions 1 and 2 are stated as though this were an on-the-record appeal; however, this is a *de novo* trial. In this proceeding, we are not concerned with what the DRB did below. Rather, we must consider the application and whether it complies with the Town of Shaftsbury Zoning Bylaw (Bylaw) anew. Thus, the parties agreed that Question 1 be interpreted to raise the question of whether Appellants had sufficient notice of the DRB proceedings. The parties also agreed that Question 2, questioning the sufficiency of the DRB's written decision, is not relevant in this *de novo* appeal, and as such, we **DISMISS** Question 2. The remaining questions ask whether the Project complies with specific sections of the Town of Shaftsbury Zoning Ordinance (Questions 3, 5 6), whether the Project is a nuisance (Question 4), and whether the application for the Project is invalid because it was submitted in the name of the wrong landowner (Question 7).

Based upon the evidence presented at trial, including that which was put into context by the site visit, the Court renders the following Findings of Fact and Conclusions of Law.

## Findings of Fact

1.  The Southern Vermont Beagle Club, Incorporated is a Vermont non-profit corporation and was formed on or about May 24, 2011.

2.  SVBC first formed and filed with the Vermont Secretary of State as a Vermont Limited Liability Company (LLC) on May 2, 2011, but then withdrew LLC status on May 24, 2011.

3.  SVBC's proposed beagle club (the Project) is to be located at 1988 East Road, Shaftsbury, Vermont on the east side of East Road on approximately 62 acres (the Property) located in the Town's Rural Residence District. SVBC has purchased an additional 20 acres to add to the 62 acres under contract.

4.  The Estate of Robert Bucknall currently owns the Property. Christopher Bucknall is an executor of the estate. SVBG has entered into a purchase and sale agreement for the Property with the Estate of Robert Bucknall.

5.  The Project entails training and conditioning dogs for rabbit hunting. An occasional field trial may be held at the club. The club may be active during State of Vermont hunting hours: one half hour before sunrise to one half hour after sunset. Dogs will not be allowed to remain at the Property overnight.

6.  Beagles are conditioned for rabbit hunting by pursuing live rabbits, which by nature run in large circles. Beagles bark as they pursue a rabbit, and thus, beagles at the Project will run and bark in circles on the Property.

7.  No structures are proposed for the beagle club except for a bridge over Furnace Brook to provide access to the rear portion of the Property.

8.  The Property will be fenced and split into two areas. The fence will be six feet high and composed of heavy gauge wire with metal posts. The front section, or pen, will be approximately 30 acres, while the rear pen will be slightly larger. The fence serves to keep rabbits in and predators out, thereby maintaining a population of rabbits. The fence also serves to keep beagles within the Property.

9.  A 50 foot setback buffer will be maintained from any wetland area. The proposed fence will be constructed outside of this buffer.

10. No gun shooting or firing will be allowed at the Property; however, there will be sporadic use of a blank pistol during field trials. The blank pistol is louder than a cap gun but quieter than a .22 caliber pistol. Field trials will take place not more than 2 times per year. During field trials, 4 or 5 dogs are grouped together; each group hunts for a rabbit, and a judge picks the best dog. The winning dogs advances to the next heat. There is little to no activity between heats. Field trials may last an entire single day.

11. No sanitation facilities will be constructed at the Property. A portable toilet (known as a porta-pot) will be brought to the Property for any organized event such as a field trial.

12. There will be a single curb cut off of East Road and into the parking lot. The parking lot will be approximately 220 feet long and 50 feet deep. A total of 20 parking spaces will be provided, including one handicapped space.

13. No tree cutting will take place for the proposed club; however, minor clearing will take place for the parking lot and other minimal on-site improvements. A hedgerow is proposed along East Road to provide screening in the area of the parking lot.

14. The beagle club will include twenty members. At the time of the merits hearing, the club had twelve members. Each member is well known by the club, and membership is by invitation only. The club takes into consideration a prospective member's record of compliance with state hunting laws and regulations.

15. Each member will be allowed to have 4 dogs at the Property at a time, and a maximum of 12 dogs will be allowed in each of the two pens for a total of 24 dogs at the Property at any one time.

16. Appellants own a residence on East Road adjoining the Property to the southwest. Appellants' house is located approximately 515 feet from the closest section of proposed fencing and more than 2,200 feet from the furthest section of proposed fencing.

17. The land between Appellants' house and the club area is relatively flat and contains a Class II wetland and Furnace Brook.

18. The SVBC application for approval of the beagle club was filed with the Town in April 2011 and later revised.

19. The DRB initially heard the matter at a hearing on May 18, 2011. Appellants received advance personal written notice of this hearing.

20. At the time of initial filing, SVBC was organized as a Vermont Limited Liability Company. During the May 18, 2011 hearing, the DRB explained to SVBC that it needed to reorganize as a non-profit organization to comply with the Bylaw.

21. During the May 18, 2011 DRB hearing, DRB member David Mance made a motion to "table the application for up to three months until the applicant returns with the requested information." All five DRB members voted in favor of the motion. The minutes for the DRB May 18, 2011 expressly state this action.

22. Appellants attended the May 18 hearing, and Mr. Outwater spoke at this hearing in support of continued consideration of the application.

23. Although he had an opportunity to do so, Mr. Outwater did not divulge his concerns with the proposed club at the May 18 DRB hearing, because as he later admitted during his testimony before the Environmental Division, he did not want to "let applicant prepare for his concerns."

24. The DRB subsequently held hearings on the proposed club on July 6, 2011, July 20, 2011, August 3, 2011, and August 31, 2011.

25. Notice of the subsequent DRB hearings was advertised in the Bennington Banner, a newspaper of general circulation in the greater Bennington area, including Shaftsbury. Notice of the subsequent DRB hearings was also posted at the Town Office.

26. Appellants did not receive personal notice of the DRB subsequent hearings and they did not attend or participate at the subsequent hearings.

27. On August 31, 2011, the DRB granted SVBC conditional use approval and site development plan approval as a non-profit group services facility for training and running beagles.

28. Appellants timely filed an appeal of the August 31, 2011 DRB decision.

## Conclusions of Law

### I.    Notice to Appellants

In their Question 1, Appellants, even though they participated at the initial DRB hearing of the Project and timely filed an appeal of the DRB's decision, claim that notice of the DRB's hearings in this matter was improper, and they request that this Court remand the matter to the DRB. The DRB is a type of Appropriate Municipal Panel (AMP). See 24 V.S.A. § 4303(3). Notice issues typically raised to this Court involve claims that a potential appellant had no notice of an AMP proceeding, and therefore, the potential appellant could not "participate" in

4

the proceeding as required to appeal the AMP's decision under 24 V.S.A. § 4471(a). In this matter, however, no party challenges Appellants' right to appeal the DRB's decision. Rather, Appellants assert that they did not have notice of the DRB's hearings subsequent to the initial May 18, 2011 hearing, and they request that the matter be remanded to the DRB so that they can participate before the DRB.

An AMP is required to hold public hearings on land use applications and provide advance notice of its hearings. 24 V.S.A. § 4464(a). Notice of a hearing on applications for conditional use review must include the date, place, and purpose of the hearing, and must be published in a newspaper, posted in three or more public places, and provided in writing to the applicant and owners of property adjoining the project site at least 15 days before the hearing. Id. at § 4464(a)(1). Notice requirements for a hearing on applications for site plan review are substantially similar but do not include publication in a newspaper, and the notice need only occur 7 days before the hearing. Id. at § 4464(a)(2).[1]

When a DRB's hearing spans more than one day, the subsequent hearing days do not require separate or additional notice if the time and place for the continued hearing are announced before adjournment of each hearing day. 1 V.S.A. § 312(c)(4); see also In re McEwing Servs., LLC, 2004 VT 53, ¶ 17, 177 Vt. 38 (stating that a municipal panel can "continue [a] hearing and reconvene it at a later date, as long as it announces at adjournment the time and place where the hearing will be reconvened"); Woodstock Cmty. Trust, Inc., No. 263-11-06, slip op. at 15–16 (Vt. Envtl. Ct. May 10, 2007) (Wright, J.) (concluding that adjoining landowners were not entitled to separate notice of a continued hearing when the time and place for the subsequent day of hearing was announced during a prior day of hearing). Defects in the form or substance of notice shall not invalidate an AMP's action where reasonable efforts are made to provide adequate posting and notice; and the notice was not materially misleading in content. 24 V.S.A. § 4464(a)(5).

In this case, Appellants received written, advance notice of the May 18, 2011 DRB hearing, which they attended and at which Mr. Outwater spoke. During the May 18, 2011 DRB hearing, DRB member David Mance made a motion to "table the application for up to three

---

[1] As concluded below in this decision, the Project requires site plan review, not conditional use review. Because the notice requirements for conditional use review under § 4464(a)(1) include all the notice requirements for site plan review under § 4464(a)(2), and because the DRB below conducted conditional use review, we review the adequacy of the Town's notice in this case under conditional use standards.

5

months until the applicant returns with the requested information." Exhibit B, Town of Shaftsbury Dev. Rev. Bd. Meeting Minutes at 3 (May 18, 2011). As expressly stated in the meeting minutes, all five DRB members voted in favor of the motion. Thus, while the DRB provided notice that it would reconsider the application within the following three months upon adjourning the May 18 hearing, it neglected to provide an exact time and place for the continued hearing in compliance with 1 V.S.A. § 312(c)(4).

Following the initial May 18 hearing, the DRB held subsequent hearings on SVBC's application on July 6 and 20, and August 3 and 31, 2011. Appellants did not receive personal notice of the DRB's subsequent hearings, and they did not attend or participate at the July 6 and 20, or August 3 and 31, 2011 DRB hearings. Appellants claim that they did not participate in the subsequent hearings because of the DRB's failure to provide them adequate notice of those hearings, specifically, by failing to establish an exact date and time for the first continued hearing at the May 18 hearing and by failing to cure that omission with written, personal notice to Appellants.

SVBC's witnesses testified that in advance of the DRB's subsequent hearings, however, the Town advertised notice of the upcoming hearings in the Bennington Banner, a newspaper of general circulation in the greater Bennington area, including Shaftsbury. SVBC's witnesses further testified that notice of the subsequent DRB hearings was also posted at the Town Office. We find that these efforts of the Town were reasonable to provide notice to potentially interested parties of the continued hearings under 24 V.S.A. § 4464(a)(5) and cured the notice defect created when the DRB failed to state an exact date and time for the next hearing at the May 18 hearing. Appellants testified that they do not subscribe to the Bennington Banner and that they do not read newspapers, and therefore, they did not have notice of the subsequent DRB hearings. Appellants also testified that they thought that SVBC needed to file a new application to cure its non-profit status and that they would receive personal notice of any subsequent hearing. Although Appellants' understanding was unfortunate, it was not the result of a materially misleading notice. See 24 V.S.A. § 4464(a)(5). Thus, pursuant to 24 V.S.A. § 4464(a)(5), we conclude that the DRB's proceedings on SVBC's permit application were properly noticed.

The purpose of the notice provisions in 24 V.S.A. § 4464 is to inform interested persons of a proposed action and to give them a reasonable opportunity to express their support or

6

opposition. See Town of Mendon v. Ezzo, 129 Vt. 351, 357–58 (1971) (interpreting a previous version of 24 V.S.A. § 4464(a), formerly codified as 24 V.S.A. § 4447). At their core, notice requirements protect due process and fundamental administrative fairness in municipal adjudicative proceedings. See In re Hignite, 2003 VT 111, ¶ 8, 176 Vt. 562 (entry order). In addition to finding that the Town's efforts to provide notice of the continued hearing dates cured any notice defect in this case, we note that, based on the facts of this case, deciding the matter on the merits rather than remanding it to the DRB does not violate fundamental fairness.

The DRB informed Appellants at the May 18 DRB hearing that the DRB would consider SVBC's application at subsequent hearings and that these hearings would take place within three months of May 18. Thus, despite Appellants' arguments that the notice for subsequent hearing days was inadequate, they were informed about Applicant's proposal, attended the first hearing, and were aware that subsequent hearings would occur in the near future. Additionally, we take into consideration that Appellants, and specifically Mr. Outwater, had the opportunity to express concerns about the Project to the DRB at the May 18 hearing, but declined to do so. Mr. Outwater testified during our *de novo* hearing that he chose not to do so because he did not want to "let applicant prepare for his concerns." Mr. Outwater's actions implicate principles of fundamental fairness. The land use permitting process is designed to allow the vetting of concerns so applicants can modify proposed projects to eliminate or lessen neighborhood concerns.

Moreover, Appellants have availed themselves of the full opportunity to raise their concerns about the Project before this Court on appeal. During our two day *de novo* hearing in this case, we applied the substantive standards that were applicable before the DRB, and we considered the questions raised by Appellants. See 10 V.S.A. § 8504(h); V.R.E.C.P. 5(g); see also, e.g., In re Green Peak Estates, 154 Vt. 363, 372 (1990) ("In a de novo hearing, the tribunal hears the matter as if no prior proceedings had taken place."). This Court heard the evidence anew, and proceedings before the DRB and any record produced by the DRB had no effect on this Court's proceedings or our final decision on the merits of the proposal. In fact, Mrs. Outwater testified that she was satisfied with the *de novo* appeal process and with her opportunity to express her concerns during the merits hearings before this Court about the Project. Remanding the matter at this time would equate to a third opportunity for the Appellants to be heard in their opposition to the Project. Such inefficiency within our land use permitting process must

7

be avoided. See V.R.C.P. Rule 1; V.R.E.C.P. Rule 1 (stating that the V.R.C.P. and V.R.E.C.P. are to be construed to favor speedy and expedited adjudications, among other considerations).

Based on the totality of the evidence before the Court, we find that Appellants had adequate notice of all of the DRB hearings on the matter currently before the Court. Appellants received written notice of and attended the DRB's initial May 18 hearing. Although the DRB at that hearing failed to state the time and place of the next hearing on the matter, the Town cured that defect by making reasonable efforts to provide posting and notice of the subsequent hearings.

## II.    Compliance with the Bylaw's Rural Residence Districts Provision

Appellants' Question 3 asks whether the proposed beagle club is a use in violation of Bylaw § 4.1. As authorized by the enabling legislation now found in 24 V.S.A. § 4414(1), the Town has chosen to adopt regulations defining different and separate zoning districts and to identify within these districts land uses that are permitted as of right and land uses requiring review and approval. Bylaw § 4.1 authorizes several permitted uses in the Rural Residence (RR) Districts.

The Property is located within the RR-40 District of the Town. In this case, SVBC, a non-profit corporation, seeks approval of club facilities it will operate at the Property. A club operated by a non-profit organization is a permitted use "after site plan approval" in the RR Districts. Bylaw § 4.1.1.4.3. Thus, we find that the Project is a use permitted on the Property on the sole condition of obtaining site plan approval. As long as the Project successfully obtains site plan approval, we otherwise conclude that the proposed use complies with Bylaw § 4.1.

## III.    Compliance with Conditional Use Requirements

Appellants' Question 5 asks whether the proposed beagle club is a use that complies with the conditional use criteria of Bylaw § 3.5. Based on the facts and law before us, however, we conclude that the Project does not require conditional use approval.

SVBC's application (Exhibit A-4) seeks approval of a fence around the Property for a beagle club but does not specify the type of approval SVBC seeks. In fact, based upon SVBC's testimony and exhibits, SVBC never requested conditional use approval for the Project. Despite this, Finding of Fact number 2 in the DRB's decision on appeal, Exhibit 5, states that "Applicant seeks approval under Section 3.5 Conditional Use." The DRB appears to have reviewed the Project for compliance with conditional use criteria under Bylaw § 3.5 during its July 6 hearing.

8

See Exhibit B, Town of Shaftsbury Dev. Rev. Bd. Meeting Minutes (July 6, 2011). The DRB decision later concludes that the Project complies with Bylaw § 3.5.

As concluded above, the Project is a permitted use under Bylaw §§ 4.1.1.4 and 4.1.1.4.3. The Bylaw does not require or authorize conditional use review of this permitted use. Instead, the Bylaw requires that SVBC's application undergo site plan review pursuant to Bylaw § 3.6; if site plan approval is obtained, the use is permitted without further review.

The parties have provided no facts or legal arguments establishing the need or authority to subject the Project to conditional use review pursuant to Bylaw § 3.5. We therefore conclude that conditional use review of the proposed beagle club is not required or authorized. As such, we **DISMISS** Appellants' Question 5.

## IV. <u>Compliance with Site Plan Requirements</u>

By their Question 6, Appellants raise the issue of whether the site plan for the proposed beagle club complies with Bylaw § 3.6, which outlines application requirements and review standards for site development plans. While Appellants raise the issue of site plan compliance, they present no testimony or evidence of non-compliance. SVBC offered its site plan into evidence as Exhibits 10 and 11. Based upon our review of these exhibits, we find that the site plan meets all requirements of Bylaw § 3.6. For instance, the site plan shows the boundaries, dimensions, and total area at scale as required by Bylaw § 3.6.2.2.1; the location and detail of the only structure involved in the proposed use, a bridge crossing Furnace Brook, as required by Bylaw § 3.6.2.2.2; and the proposed curb cut and parking area as required by Bylaw §§ 3.6.2.2.3 and 3.6.2.2.4. We therefore conclude that the proposed site plan complies with Bylaw § 3.6.

## V. <u>Application Filed in the Name of the Wrong Landowner</u>

In their Question 7, Appellants assert that SVBC's application is invalid because it was submitted in the name of the wrong landowner. On or about April 25, 2011, SVBC's original application (Exhibit A-4) was filed with the Town. On that application, the owner of the Property is incorrectly listed as Chris Bucknall, having an address of 509 Haas Court, Davidsonville, Maryland. The DRB relied on the original application in conducting its review of the Project. Subsequently, SVBC filed a revised application (Exhibit A-1) with the Town that listed the Property's owner as the "Estate of Robert Bucknall, Chris Bucknall as Executor," having an address of 509 Haas Court, Davidsonville, Maryland.

9

At trial before this Court, it was undisputed that the Estate of Robert Bucknall owns the Property.

The purpose of requiring the identity of a landowner on an application for a municipal land use approval is to ensure that the landowner, who has a substantial interest in his or her property, supports the proposed use of the property. The identity of the property owner is generally not a consideration an AMP, or this Court, may take into account in reviewing a land use permit application. See Vt. Baptist Convention v. Burlington Zoning Bd., 159 Vt. 28, 30–31 (1992) ("A distinction based upon the identity of the owner rather than the public health, safety, morals, or general welfare would be invalid."); In re Appeal of Sardi, 170 Vt. 623, 624 (2000) (mem.) (refusing to interpret a zoning ordinance in a manner that would distinguish between two types of land use—"private club" and "lodge"—based solely on the ownership of a property at issue in the matter rather than on the use of the property). Unless a party appealing a land use decision can point to prejudice arising from an inaccuracy in the name of the landowner listed on a permit application, we see no reason why such an inaccuracy should render a decision based on such an application invalid.

In this case, Appellants do not suggest that the error on the original permit application caused them to be prejudiced or materially misinformed with respect to the proposed use under consideration or the specific parcel of land involved in the Project. Furthermore, throughout SVBC's pursuit of Town approval for its beagle club, the Project remained materially unchanged, even though the application was ultimately revised to list the correct landowner.

The original application, upon which the DRB conducted its review below, listed Chris Bucknall as the owner and provided his address in Maryland. Chris Bucknall is actually an executor of his father's estate, the Estate of Robert Bucknall, which is the true owner of the Property. This technical inaccuracy is not material to the Town's, or this Court's, review of the application. Therefore, we conclude that any error in listing Chris Bucknall as the owner, rather than expressly identifying him as an executor of the estate that actually owns the property, does not invalidate the application or the DRB's proceedings and decision below.

## VI.     The Beagle Club Use - Nuisance

Appellants Question 4 asks whether the proposed beagle club constitutes a nuisance under the Bylaw or the Town's Dog Ordinance. The Bylaw, in Appendix A - Definitions, defines nuisance to be "[a]n annoying, unpleasant, or obnoxious noise, odor, thing, or practice

10

by decision of the Zoning Administrator." Section 4A of the Town's Dog Ordinance, as amended January 19, 1998, states that "[n]o person shall keep or harbor any dog which by frequent or habitual barking, howling, or yelping disturbs the peace and quiet of persons of ordinarily [sic] sensibility."

Before this Court is SVBC's application for approval of its beagle club. As concluded above, the Project is a permitted use which only requires site plan review and approval. As also concluded above, the proposed beagle club's site plan complies with the Bylaw's site plan requirements. Unlike conditional use review, site plan approval does not require a review of whether the proposed "use is in conformance with other provisions of ordinances, regulations, and bylaws of the Town of Shaftsbury." Compare Bylaw § 3.5.1 with Bylaw § 3.6. Because we do not have the authority to review this club for compliance with conditional use standards, we will not embark upon such a review. Furthermore, Appellants did not provide any facts or evidence of a party raising the issue of whether the Project is a nuisance below or of the Zoning Administrator or DRB making a decision on that issue. We therefore will not undertake such a review in the first instance in this appeal. See, e.g., In re RACDC Retention Pond, No. 62-5-12 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Sept. 27, 2012) (Walsh, J.) (refusing to consider issues raised by a party on appeal not brought before the DRB below). Similarly, nothing within our review relates to the Town's Dog Ordinance and whether or not SVBC's proposed use could, in the future, violate the Dog Ordinance. Thus, the question of whether the proposed beagle club constitutes a nuisance is beyond this Court's subject matter jurisdiction in this appeal. We therefore **DISMISS** Appellants' Question 4 without reviewing its substance.

### Conclusion

For the reasons discussed above, we conclude that:

1. Appellants' Questions 2, 4, and 5 are **DISMISSED** as beyond the scope of our review in this *de novo* appeal.

2. Notice of the DRB's May 18, 2011 hearing was proper; the DRB's failure to state the time and place for the continued hearing at the May 18 hearing was a defect in notice cured, pursuant to 24 V.S.A. § 4464(a)(5), by the Town's efforts to provide notice of the subsequent hearings; and remand to the DRB is not warranted under the facts and circumstances of this case (Question 1).

11

3. The Project complies with Bylaw § 4.1 (Question 3); SVBC's proposed site plan complies with Bylaw § 3.6 (Question 6); and SVBC's application is not invalid for stating the wrong landowner (Question 7).

This matter is remanded to the Town of Shaftsbury Zoning Administrator to complete the ministerial act of issuing a zoning permit pursuant to Bylaw § 8.1 that is consistent with this opinion and the unappealed portions of the DRB decision.

A Judgment Order accompanies this Decision. This completes the current proceedings before this Court.

Done at Berlin, Vermont, this 17th day of January, 2013.


_____

Thomas G. Walsh, Environmental Judge

12