STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  |  |  |
|---|---|---|
| In re Twin Pines Housing Trust & | { | Docket No. 95-7-11 Vtec |
| Dismas of Vermont Conditional Use | { | |

## Decision on Motion for Summary Judgment

On appeal is a decision by the Town of Hartford Planning Commission ("the Commission") granting conditional use approval to Dismas of Vermont ("Dismas") and Twin Pines Housing Trust for the conversion of an existing 3,800-square-foot building at 1673 Maple Street in Hartford Village, Vermont from use as a multi-family dwelling to use in part as an office and in part as a lodging house. Appellants include Lani and Kathleen Janisse, Praise Chapel, Inc., and Potters House School & Daycare (collectively, "Appellants"), and both the Town of Hartford and Nancy A.G. Vogele appear as interested persons.

Currently pending before the Court is a motion from Dismas seeking summary judgment on the first five Questions from Appellants' Statement of Questions. Appellants have filed a response to the motion, but none of the other parties have chosen to respond. In this matter Dismas is represented by Daniel C. Hershenson, Esq., Appellants are represented by Stephen P. Girdwood, Esq., the Town of Hartford is represented by William F. Ellis, and the remaining parties appear pro se.

## Factual Background

For the sole purpose of putting the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1. Dismas is a non-profit organization that provides transitional housing to formerly incarcerated Vermonters.

2. Dismas has entered into a contract with Twin Pines Housing Trust to purchase a 3,800-square-foot 1900s Victorian home at 1673 Maple Street in Hartford Village, Vermont.

3. The building at 1673 Maple Street currently consists of three separate apartments and is located on approximately 0.258 acres in the Village Residential-Commercial, or VR-C, zoning district in the Town of Hartford.

1

4.      In the spring of 2011, Dismas and Twin Pines Housing Trust sought conditional use approval and site development plan approval from the Commission to authorize the conversion of an existing 3,800-square-foot building at 1673 Maple Street in Hartford Village, Vermont from use as a multi-family dwelling to use in part as an office and in part as a lodging house.

5.      In its application, Dismas proposes to complete physical renovations to the building at 1673 Maple Street to change it from a multi-unit configuration to a single-family dwelling. Dismas also proposes to house 9–12 residents, including 2 college students or volunteers, in the building while also maintaining 2 trained adult staff on-site during the day. Dismas will offer priority placement to former prisoners returning to the Town of Hartford, but will not offer housing to sex offenders.

6.      Residents will be expected to prepare breakfasts and lunches daily, to cook meals on weekends, to help with weekly chores assigned to them, and to help volunteers who cook dinner for them on week nights. Dismas' program model is that "Dismas Is Family" and "[r]esidents live in [a] community where every voice is heard," work or go to school, participate in communal evening meals, and attend weekly housing meetings where there is consensus decision-making. (Statement of Undisputed Material Facts, Ex. B, 5, filed Feb. 15, 2012.) According to Dismas, "[d]innertime is the centerpiece of the Dismas day when residents, college students and community volunteers join together as 'family' around a large communal dining table." Id. at 3.

7.      Residents who are former prisoners will be asked to commit to a minimum 3-month stay, although Dismas anticipates many will choose to stay for 6 to 8 months, and others for 12. Residents who are college students will generally stay for an academic year although some will only stay for the summer months.

8.      On June 9, 2011, the Commission heard evidence on the conditional use application and, on June 13, 2012, issued a decision granting conditional use approval to Dismas and Twin Pines Housing Trust. In its decision, the Commission determined that the proposed uses include a "lodging house" use, a type of conditional use within the VR-C zoning district under the Town of Hartford Chapter 260 Zoning Regulations ("the Regulations"). Appellants subsequently appealed that determination in the above-captioned docket, No. 95-7-11 Vtec. Dismas then filed the pending motion for summary judgment.

2

9. On June 15, 2011, the Commission granted site development plan approval to Dismas and Twin Pines Housing Trust. Appellants subsequently appealed that determination in Docket No. 96-7-11 Vtec. That appeal is not the subject of the pending motion.

### Discussion

Appellants have appealed the Commission's June 13, 2011 decision granting conditional use approval to Dismas and Twin Pines Housing Trust for the conversion of an existing 3,800-square-foot building at 1673 Maple Street in Hartford Village, Vermont from use as a multi-family dwelling to use in part as an office and in part as a lodging house. Dismas has filed a motion seeking summary judgment on the first five Questions from Appellants' Statement of Questions, and Appellants oppose that motion.

We will grant summary judgment to a moving party (here, Dismas) if that party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). If the moving party is seeking judgment regarding an issue for which the party will bear the burden of proof at trial, the moving party must provide, in its statement of undisputed material facts, "specific citations to particular parts of material in the record" that would be admissible in evidence. V.R.C.P. 56(c)(1), (2); see also Travelers Ins. Cos. v. Demarle, Inc. USA, 2005 VT 53, ¶ 3, 178 Vt. 570 (stating the general proposition that the party moving for summary judgment has the burden of proof). If the moving party is seeking judgment regarding an issue for which the party will not bear the burden of proof at trial, it need only show that the opposing party has not or cannot cite to admissible evidence supporting material facts necessary for the non-moving party to prevail on that issue at trial. V.R.C.P. 56(c)(1)(b), (2); see also Reporter's Notes—2012 Amendment, V.R.C.P. 56. In ruling on a summary judgment motion, the Court is directed to "accept as true the [factual] allegations made in opposition to the motion for summary judgment," as long as they are supported by reference to admissible evidence, and to give the non-moving party (here, Appellants) the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356; see V.R.C.P. 56(c).

Questions 1, 3, 4, and 5 in Appellants' Statement of Questions address specific requirements in the Regulations needed for conditional use approval of the conversion of use proposed by Dismas and Twin Pines Housing Trust. No party disputes that these requirements must be met in order for the applicants to receive conditional use approval. Question 2 asks

whether the applicants' proposed project requires a variance. Because this is a de novo proceeding on the application for conditional use approval, Dismas, as one of the applicants, will bear the burden of proof at trial to show that its application conforms with the requirements in the Regulations raised by Appellants in Questions 1–5. Thus, in order for the Court to grant summary judgment to Dismas on any of these Questions, Dismas must have provided the Court with sufficient undisputed facts to support the conclusion that its application conforms with the requirements raised in the Questions. We address Dismas' motion with this requirement in mind.

## I.     Questions 1 and 3

Appellants' Question 1 asks whether the proposed project meets the definition of either "lodging house" or another type of conditional use allowed within the VR-C zoning district pursuant to the Regulations. Question 3 asks whether a "residential facility exclusively for furloughed inmates from the Vermont Department of Corrections" meets the definition of "lodging house" in Regulations § 260-59. (Revised Statement of Questions on Appeal 1, filed Oct. 3, 2011.)

Dismas argues that it is entitled to summary judgment on Questions 1 and 3 because the undisputed facts in the record unquestionably show that the non-office use which Dismas proposes for the building at 1673 Maple Street fits within the plain language of the definition of "lodging house," a type of conditional use within the VR-C zoning district. Dismas also argues that nothing in the definition of "lodging house" excludes occupancy of a building by former prisoners and, further, that the Town of Hartford is not authorized, under the enabling legislation for zoning regulations found within 24 V.S.A., Chapter 117, to adopt such exclusion or to regulate the building's use based on its ownership. Appellants respond that Dismas' proposed use is more like that of a halfway house than a customary lodging house and that, in determining whether the proposed use fits within the definition of lodging house, the Commission and this Court must consider the purpose of the proposed use and the relationship between Dismas and the Department of Corrections.

Appellants do not dispute that the building at 1673 Maple Street lies within the VR-C zoning district, a district in which lodging houses are allowed as a conditional use. See Regulations § 260-20. Nor do they dispute Dismas' factual allegations regarding the proposed occupancy of the building or how the residents will function day-to-day. Rather, Appellants

4

dispute whether the facts regarding the proposed use show that it fits in the definition of a lodging house.

Our determination of whether the proposed non-office use fits in the definition of lodging house turns on the definition of "lodging house" that the Town of Hartford has adopted in its Regulations. The Regulations define "lodging house" as follows:

> A single-family dwelling in which six or more unrelated adults live as permanent, seasonal, or occasional residents. The occupants may live as a single housekeeping unit, or the dwelling may be primarily occupied by one person with sleeping rooms rented to additional people (includes boarding house, rooming house, dormitory, and private recreational lodge).

Regulations § 260-59. When interpreting municipal ordinances such as this one, we apply the same principles of construction as we apply to legislative statutes. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. That is, we "construe words according to their plain and ordinary meaning." Id. Because our paramount goal in interpreting an ordinance is to give effect to the intent of the relevant legislative body, we accept the plain meaning of the words unless doing so would make a provision ineffective or create irrational results. Cf. Town of Killington v. State, 172 Vt. 182, 189 (2001). We will also look outside the language of the ordinance to help us ascertain the legislative intent if the language is ambiguous and, therefore, prevents us from identifying a plain and ordinary meaning. Cf. Id.

Regulations § 260-59 defines a lodging house, in part, as a single-family dwelling that houses "six or more unrelated adults." There is no restriction on who these adults can be in this or subsequent portions of the definition. The undisputed facts here are that the building at 1673 Maple Street will be converted from its current multi-unit configuration to a single-family dwelling and will house 9–12 residents, some of whom will be college students or volunteers and most of whom will be former prisoners. As long as occupancy of the building is confined to "adults," Dismas' proposed non-office use fits within the plain and ordinary meaning of the words in this portion of the Regulations' definition of lodging house.

The remainder of the Regulations' definition of lodging house requires that the adults occupying the building "live as permanent, seasonal, or occasional residents," and that they either "live as a single housekeeping unit" or rent "sleeping rooms" in a building that is "primarily occupied by one person." Regulations § 260-59. The definition's inclusion of both occasional and permanent occupancy, and its reference to "boarding house, rooming house, dormitory, and private recreational lodge," indicates that lodging houses in the Town of

5

Hartford include single-family dwellings that provide a wide range of occupancy durations. Id. Here, the undisputed facts are that future residents of the building at 1673 Maple Street who are former prisoners will stay for three months or more and any college student residents will stay for the summer months or longer. Thus, the span in the durations of occupancy Dismas proposes for residents of the building at 1673 Maple Street is within the spectrum of durations of occupancy constituting a lodging house under the Regulations.

Additionally, the undisputed facts indicate that future residents of the building at 1673 Maple Street will function day-to-day as a "housekeeping unit," one of the ways a proposed use can meet the final provision in the Regulations' definition of lodging house. Dismas' program model is that "Dismas is family," and residents will be required to help with assigned chores, prepare breakfasts and lunches daily, cook dinner on weekends, help volunteers who cook dinner for them on week nights, participate in communal evening meals, and attend weekly housing meetings. (Statement of Undisputed Material Facts, Ex. B, 5, filed Feb. 15, 2012.) Dismas states that dinners are considered the "centerpiece of the Dismas day." Id. at 3. Thus, Dismas' proposed non-office use fits within the plain and ordinary meaning of the words "live as a single housekeeping unit."

In sum, the undisputed material facts put forth by Dismas show that its proposed non-office use fits within the definition of "lodging house" in Regulations § 260-59. We need not look outside of the plain and ordinary meaning of the words in this definition to identify the intent of the Town of Hartford's legislative body when it created and enacted the ordinance provision: that intent is clear because the definition is unambiguous, and construing it as we have does not create an ineffective or irrational result.

Appellants' main argument opposing summary judgment on this issue is that Dismas' proposed use is more like that of a halfway house than a lodging house. However, Appellants do not point to anywhere in the Regulations where a "halfway house" use exists. Additionally, Appellants do not point to any type of use listed in the Regulations that calls into question our acceptance of the plain and ordinary meaning of the words in the definition of lodging house.

Instead, at the crux of Appellants' argument appears to be two assertions regarding what the Court should consider when determining whether Dismas' proposed use fits within the definition of lodging house—the purpose of Dismas' proposed use and the relationship between Dismas and the Department of Corrections. Looking first to purpose, while we do not

6

determine here that a detailed purpose component can never be incorporated into the definition of a property use, it is clear that the definition of "lodging house" adopted by the Town of Hartford does not restrict the specific purposes a lodging house can serve. Indeed, the definition's inclusion of examples of the forms lodging houses can take—"boarding house, rooming house, dormitory, and private recreational lodge"—implies that the Town of Hartford foresees lodging houses serving a number of purposes in the community. Regulations § 260-59.

Regarding the relationship between Dismas and the Department of Corrections, Dismas is correct in its assertion that the regulation of land use based solely on the identity of the owner of the property is not within the authority granted to a municipality under 24 V.S.A., Chapter 117. Vt. Baptist Convention v. Burlington Zoning Bd. 159 Vt. 28, 30–31 (1992) ("A distinction based upon the identity of the owner rather than the public health, safety, morals, or general welfare would be invalid."). While this does not mean that a municipality cannot describe a type of use as public or private in the label or definition of that use, land uses cannot be distinguished from each other based solely on the identity of the landowner. See In re Appeal of Sardi, 170 Vt. 623, 624 (2000) (mem.) (refusing to interpret a zoning ordinance in a manner that would distinguish between two types of land use—"private club" and "lodge"—based solely on the ownership of a property at issue in the matter rather than on the use of the property). Here, it is clear that the term "lodging house," and the definition of which that the Town of Hartford has adopted, is not restricted to addressing only privately operated lodgings. Additionally, entertaining Appellants' assertion that the relationship between Dismas and the Department of Corrections could be determinative of what type of land use Dismas is proposing appears analogous to the consideration that the Vermont Supreme Court in Appeal of Sardi refused to make when classifying a proposed use. See id.

We also find unavailing the cases that Appellants reference to support their argument that Dismas' proposed non-office use is that of a halfway house rather than a lodging house. One of the cases that Appellants cite concerns the definition of "correctional facility" found in the legislation that governs the operation of the Department of Corrections (Title 28 of the Vermont Statutes Annotated), not the enabling legislation relevant to a municipality's regulation of land use (Title 24, Chapter 117 of the Vermont Statutes Annotated). See Nichols v. Hoffmann, 2010 VT 36, ¶¶ 6–7, 188 Vt. 1. This case is not relevant to our interpretation of "lodging house" as defined in the Regulations. The other three cases Appellants focus their

7

discussion on do not involve courts construing the same or similar language as that which the Town of Hartford, pursuant to 24 V.S.A., Chapter 117, has chosen to adopt in its definition of lodging house. Rather, one of the cases does not reach the issue of what the municipal regulations in question require, see Saginaw Hous. Comm'n v. Bannum, Inc., 576 F.3d 620 (6th Cir. 2009), and the other two cases involve the interpretation of language that is both different from that at issue here[1] and is within ordinances adopted by municipalities outside of Vermont, specifically municipalities in Maine and New York. See N. Me. Gen. Hosp. v. Ricker, 572 A.2d 479 (Me. 1990); Libolt v. Town of Irondequoit Zoning Bd. of Appeals, 885 N.Y.S.2d 806 (N.Y. App. Div. 2009). Relying on these three cases in our interpretation of a specific property use as labeled and defined by the Town of Hartford would require us to assume that Vermont municipalities have little autonomy from one another or from other states' municipalities in terms of how each labels and defines specific property uses. We will not make that assumption.

To summarize, we find unconvincing Appellants' argument that Dismas' use is more like that of a halfway house than a lodging house. Because the undisputed material facts put forth by Dismas show that its proposed non-office use fits within the definition of "lodging house" in Regulations § 260-59, a type of conditional use within the VR-C zoning district, we **GRANT** summary judgment to Dismas on Questions 1 and 3, answering the Questions in the affirmative.

## II. Question 2

Appellants' Question 2 asks whether the proposed project requires a variance. While it is not readily apparent to the Court from what requirement in the Regulations Appellants assert that Dismas must seek a variance before receiving a zoning permit, Dismas' motion for summary judgment does not provide undisputed facts or why it is entitled to judgment on Question 2. For this reason, we **DENY** summary judgment to Dismas on Question 2.

## III. Questions 4 and 5

Appellants' Questions 4 and 5 ask whether the proposed project meets the criterion for conditional use approval found in Regulations § 260-16.A(2). This criterion requires that an

---

[1] For instance, one of the cases Appellants cite concerns whether a proposed use fits within the definition of a "single-family residence" in the municipality, a land use that explicitly excludes boarding and rooming houses as defined by the municipal ordinance. See Libolt v. Town of Irondequoit Zoning Bd. of Appeals, 885 N.Y.S.2d 806 (N.Y. App. Div. 2009). Here, the question is whether Dismas' use is a type of "lodging house," the definition of which explicitly includes both boarding and rooming houses.

applicant show that a proposed conditional use "not result in an undue adverse effect . . . such that an impact cannot be reasonably mitigated" on "[t]he character of the area, as defined by the objectives of the zoning district within which the project is located and specifically stated policies and standards of the municipal plan." Regulations § 260-16.A. In Questions 4 and 5, Appellants ask whether the proposed project will adversely impact certain qualities of the character of the area in which it is to be located.

In Dismas' Statement of Undisputed Facts, Dismas provides Appellants' responses to interrogatories wherein Appellants describe their basis for asserting that the proposed project will adversely impact the character of the area. We understand Dismas to be asserting that Appellants' answers do not include information relevant to the Court's resolution of whether the proposed project complies with the criterion for conditional use approval found in Regulations § 260-16.A(2). However, because Dismas will bear the burden of proof at trial to show that its application conforms with this criterion, we would need more from Dismas to grant it summary judgment on Questions 4 and 5. We would need Dismas to provide undisputed facts that affirmatively show that its proposed project will not adversely impact the qualities of the character of the area raised by Appellants in Questions 4 and 5. Because Dismas has not made this showing in its motion and associated Statement of Undisputed Facts, we must **DENY** Dismas summary judgment on Questions 4 and 5.

## Conclusion

For the reasons detailed above, we conclude that the non-office use proposed by Dismas and Twin Pines Housing Trust for the building at 1673 Maple Street in Hartford Village, Vermont meets the definition of "lodging house" in Regulations § 260-59. Consequently, we **GRANT** summary judgment to Dismas on Questions 1 and 3, answering the Questions in the affirmative. Dismas has not shown, however, that it is entitled to summary judgment on Questions 2, 4, and 5, and we therefore **DENY** Dismas summary judgment on these Questions.

The deadline for the submission of pre-trial motions in this matter has now passed, and a pre-trial telephonic status conference is scheduled for 2:00 pm on May 24, 2012. A two-day merits hearing is scheduled for June 13 and 14, 2012 at the Windsor County Courthouse in Woodstock, Vermont. Question 2 and Questions 4 through 9 remain for consideration during the trial.

Done at Berlin, Vermont this 26th day of April, 2012.

_____
Thomas G. Walsh,
Environmental Judge