2012 VT 63

## In re John Toor, Margaret Toor and Toor Living Trust NOV

[59 A.3d 722]

No. 11-085

Present: Reiber, C.J., Dooley and Robinson, JJ., and Gibson, J. (Ret.) and Martin, Supr. J. (Ret.), Specially Assigned

Opinion Filed August 24, 2012

---

*Thomas F. Heilmann* and *David D. Aman* (On the Brief) of *Heilmann, Ekman & Associates, Inc.*, Burlington, for Appellants.

*John H. Klesch* of *Stitzel, Page & Fletcher, P.C.*, Burlington, for Appellee Town of Grand Isle.

*Christopher D. Roy* of *Downs Rachlin Martin PLLC*, Burlington, for Point Farm Interested Persons.

¶ 1. **Dooley, J.** Appellants John and Margaret Toor appeal a decision of the Superior Court, Environmental Division, upholding a notice of violation issued by the Town of Grand Isle Zoning Administrator for changing the use of their single-family home in Grand Isle without obtaining a zoning permit. On appeal, appellants argue that renting their home does not constitute a change in use under the Town's zoning ordinance, and accordingly they were not required to obtain a zoning permit prior to renting. We agree and reverse.

¶ 2. Appellants' property in Grand Isle is located at the gateway to Lake Champlain's Inland Sea on the northern end of Ladd Point. The five-bedroom, four-and-a-half-bathroom home can accommodate many guests. In addition to the five bedrooms, appellants increased the sleeping area by adding a so-called "bunk room" for children during renovations performed a year after the house was purchased. A spacious eat-in kitchen opens to a dining room and screened-in porch, which leads to a large deck overlooking the Inland Sea. The property is one of several that form a shoreline community along the north and east borders of Ladd Point, referred to as Point Farm. The Point Farm subdivision was approved in 1978 and called for nine residential lots, each less than ten acres, and it includes roughly thirty-five acres of

undeveloped common land and two common septic systems. Each lot has its own private access to the lake, and the design of the development affords each residence a substantial amount of privacy. Appellants' home is permitted as a single-family dwelling under Grand Isle's Zoning Bylaws and Subdivision Regulations. Under the bylaws, a single-family dwelling is defined as "[l]iving quarters with cooking, sleeping and sanitary facilities provided within a dwelling unit for the use of a single family maintaining a household."

¶ 3. Appellants live in California and use their home in Grand Isle as a vacation residence. They bought the lakeside property in 2001, and have used it to entertain guests and accommodate friends and extended family members, some of whom live here in Vermont.[1] In 2009, appellants started to rent their home to defray the taxes and maintenance. In the summer and fall of 2009, appellants rented the home eleven times. In some instances the rental duration was only two nights and in others it lasted as long as two weeks. The groups renting the home used it in substantially the same way that appellants use the home: family vacations, birthday and anniversary celebrations, and entertaining guests. Appellants charged these groups rent for the time they used the home, including a nine-percent Vermont Rooms & Meals Tax.

¶ 4. In September 2009, the Town of Grand Isle Zoning Administrator issued a notice of violation to appellants alleging that they had changed the use of their property without obtaining a new zoning permit. The notice explained that the zoning bylaws defined development as including "any change in the use of any structure." It further explained that land development cannot "commence unless it is in compliance with all regulations and provisions" of the bylaws. It alleged that appellants had changed the use of their property either to a bed and breakfast, a rooming and boarding house, or a hotel or motel without a permit. The first two of these uses are permitted in the zone in which the house is situated; the last one is not. The notice demanded that

---

[1] In addition to hosting relatives and friends when they are occupying the house, appellants have allowed friends and relatives to use it when they are not there. On three occasions, they donated the use of the house at a school fund-raising auction. In none of these circumstances did appellants impose any charge for being present in the house.

appellants discontinue renting the house and apply for a permit for either a bed and breakfast or a rooming and boarding house.[2]

¶ 5. Appellants appealed the notice of violation to the Development Review Board (DRB), which upheld the Zoning Administrator's determination, although on a somewhat modified rationale. They concluded that the rental of the house meant it was not used as a "single-family dwelling," the use for which it was originally permitted. The DRB noted that in the definition of dwelling, family is defined as "one (1) or more persons living as a household (dwelling) unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels or hotels." Although the term "household unit" is not defined in the bylaws, the DRB concluded that it meant "a group of persons who regularly share a family-like household living arrangement." It concluded that the tenants did not meet this definition because they "did not regularly live together in a family-like household living arrangement, either at the subject property or elsewhere." The DRB added that it was irrelevant whether the use was as a bed and breakfast or hotel or motel or any use other than a single family dwelling because the violation resulted from a use that was different from that for which a permit had been given.

¶ 6. Appellants appealed to the Environmental Division. On cross-motions for summary judgment, the court ruled in the Town's favor and upheld the notice of violation. The Environmental Division adopted yet another rationale, holding that it would not give any deference to the DRB's interpretation of the bylaws because they are unambiguous. It held "[d]espite the lack of further clarification in the Bylaws, it appears conclusive to the Court that the use to which Appellants were putting their property from July to October, 2009, as an income-producing short-term rental, does not fit within the Bylaws' definition of single-family dwelling use." In reaching this conclusion, the court was persuaded that the "numerous financial relationships Appellants formed via receipt of payments from each group of indi-

---

[2] Appellants raise a number of practical questions about when, and how often, they would be required to obtain a new permit as they shifted between using the property themselves, allowing others to use it without charge and renting it to tenant users. We note that the bylaws do not prohibit multiple permitted uses of the same property. Thus, we interpret the requirement, as imposed by the Zoning Administrator, as demanding that appellants obtain an additional zoning permit, and not a replacement permit.

viduals," the "impermanence in composition" of the people staying at the home, and the "short duration and holiday nature" of each group's stay were inconsistent with use by a single family living as a household unit. It stated that the proper inquiry was whether the character of the tenants' occupancy, including the duration of the stay and the financial arrangements, constitutes use as a single-family dwelling.

¶ 7. Although the court found that the Town's and the DRB's attempts to characterize appellants' use was unnecessary, it did characterize appellants' use as "income producing rental property" and the tenants' use as "short-term vacation and holiday rentals." The court noted particularly that it would reach the same result "even if we assume, as Appellants argue, that each group of renters lived together as a household unit." Thus, the court concluded that appellants violated the ordinance "by changing the use of their property to an income-producing short-term rental without first obtaining a new zoning permit." Appellants filed a timely appeal.[3]

¶ 8. The parties agree that this appeal involves the interpretation and application of provisions of the Grand Isle Zoning Bylaws. Appellants' property is located in the residential zoning district. Grand Isle Zoning Bylaws § 3.2.2.6 (2009). This district has a number of permitted uses that may be relevant to the appeal: Bed & Breakfast, Single-Family Dwelling, Accessory Use/ Structure, Rooming & Boarding Houses, and Seasonal Dwelling. *Id.* The parties have been focused on whether the use is as a single-family dwelling.[4] "Dwelling, single family" is defined in the bylaws as "[l]iving quarters with cooking, sleeping and sanitary facilities provided within a dwelling unit for the use of a single

---

[3] Neighboring residents of Ladd Point have participated in this case on appeal as interested persons and oppose appellants' use of their home as a short-term rental property. They complain that appellants' rental of their home undermines the permanence, stability, and quiet seclusion of their lake-front properties.

[4] A seasonal dwelling is a structure that is not used as a primary residence and is not occupied for more than six months per year. Zoning Bylaws § 8. The facts appear to better fit this use than that of a single-family dwelling. It is not clear that redefining the use to seasonal dwelling would change the issues on appeal. Thus, we rely upon the characterization of the parties.

As noted *infra*, rental of the property might be considered an accessory use if it is "incidental and subordinate to the principal use." See *id*. Neither the Town nor the parties raised whether rental of the property was an accessory use. See note 10, *infra*.

family maintaining a household." *Id.* § 8. Although "household" is undefined, the bylaws define "dwelling" as follows:

> A building designed or used as the seasonal or permanent living quarters for one (1) or more families (one (1) family domiciled per dwelling unit). For purposes of this definition, a "family" means one (1) or more persons living as a household (dwelling) unit, but not including individuals or groups occupying rooming and boarding houses, clubs, motels or hotels.

*Id.* The bylaws also state, "Any land development not authorized under this Bylaw is prohibited." *Id.* § 2.4.

¶ 9. Before we address the merits, we set forth the various aspects of the standard of review. First, our interpretation of an ordinance, like a statute, must be based on the intent of the drafters to the extent we can determine it. *In re Pierce Subdivision Application*, 2008 VT 100, ¶ 28, 184 Vt. 365, 965 A.2d 468. Our review of an interpretation of a zoning ordinance by the Environmental Division is deferential. *In re Sardi*, 170 Vt. 623, 623, 751 A.2d 772, 773 (2000) (mem.). We will overturn the Environmental Division's interpretation only on a finding of clear error. *In re Armitage*, 2006 VT 113, ¶ 3, 181 Vt. 241, 917 A.2d 437. Zoning ordinances must be construed narrowly in favor of the landowner. *In re Weeks*, 167 Vt. 551, 555, 712 A.2d 907, 910 (1998) ("[Z]oning ordinances are in derogation of common law property rights and . . . 'any uncertainty must be decided in favor of the property owner.'" (quoting *In re Vitale*, 151 Vt. 580, 584, 563 A.2d 613, 616 (1989))); *Town of Westford v. Kilburn*, 131 Vt. 120, 126, 300 A.2d 523, 527 (1973)) ("Because zoning ordinances are in derogation of common law property rights, they are strictly construed."). Narrow construction ensures that requirements are ascertainable. See *In re JAM Golf, LLC*, 2008 VT 110, ¶ 13, 185 Vt. 201, 969 A.2d 47 ("Zoning ordinances must 'specify sufficient conditions and safeguards' to guide applicants and decisionmakers. We will not uphold a statute that 'fail[s] to provide adequate guidance,' thus leading to 'unbridled discrimination' by the court and the planning board charged with its interpretation." (quoting *Kilburn*, 131 Vt. at 122, 300 A.2d at 525)); *In re Handy*, 171 Vt. 336, 347, 764 A.2d 1226, 1236 (2000) (narrow construction ensures that a "landowner [is] given fair notice of what it can and cannot do with the land.").

¶ 10. This case was decided on summary judgment. "Summary judgment is appropriate when there is no genuine issue as to any material fact and any party is entitled to judgment as a matter of law." *In re Times & Seasons, LLC*, 2011 VT 76, ¶ 8, 190 Vt. 163, 27 A.3d 323 (citing V.R.C.P. 56(c)(3)). In this case, the facts are undisputed, and the only question is interpreting how the zoning bylaws apply to these facts.

¶ 11. Three main features of this case inform our decision. First, apart from the nature of the specific use in question, the house meets the definition of a single family house. It has "cooking, sleeping and sanitary facilities provided within a dwelling unit for the use of a single family maintaining a household." Evidence that the house is for the use of a single family is the presence of a single kitchen, dining area and living room. There is nothing about the structure that violates the bylaws.

¶ 12. Second, the uses that appellants put the property to when they are occupying it, or even when they are not present, are essentially the same as the uses to which the tenants put the property. The house is a large vacation house with many bedrooms, a dining area for fifteen, and a large kitchen with three ovens and two refrigerators. As John Toor stated in his affidavit, "[t]here was a steady stream of visitors, parents, siblings, children and friends. Unless there were overflows due to the large number of people we had as guests, on most occasions they all stayed at the house with us." Friends and relatives used the property when appellants were not there. With one exception, rental of the house was to a single person or a couple, who then invited others to use it with the renter(s).[5]

¶ 13. Third, the position of the Town and the adjudicative bodies significantly morphed as this case worked through the process. The original notice of violation viewed appellants' illegal act primarily as a failure to obtain a permit for a bed and breakfast or a rooming or boarding house, both permitted uses. In fact, the

---

[5] The exception was that three couples used the house for two nights to celebrate a Jewish holiday and each couple paid their share independently. The Town has not argued that this rental, as opposed to the others, violated the bylaws because it was a multi-family use. The Environmental Division opinion is based, in part, on the "sum of Appellants' financial relationships with the groups," and the "numerous financial relationships." Although the point of the court is unclear, as discussed *infra* in note 6, we do not read it as relating to the unique arrangement for the three couples.

notice of violation required appellants to submit a permit application for one of these uses. By the time the case reached us, the Town conceded that appellants' use is neither as a bed and breakfast nor a rooming and boarding house. The Town's position now is that the use is unauthorized and therefore illegal under the bylaws' residual prohibition on unauthorized uses.

¶ 14. The DRB concluded that the violation occurred because persons occupying the house "did not regularly live together in a household living arrangement, either at the subject property or elsewhere." The DRB derived this rationale by adding the word "regularly" to the wording of the bylaws, but there is no indication that this addition was intended. This addition was simply an ad hoc way to exclude groups of people coming together for their temporary social enjoyment. In fact, under this rationale, appellants' use of the house when they were occupying it would violate the bylaw as long as they had friends or relatives staying with them because that group did not regularly live together at any location.

¶ 15. The Environmental Division's opinion is not based upon whether the rental groups regularly lived together as a household — indeed, the court held that there was a violation even if each group were living together as a household unit. What was important to the Environmental Division was the nature of the rental groups, taken as a whole. The court's view was that the violation occurred because of the income production, through numerous financial arrangements,[6] and the short-term rental periods, which created impermanence.[7]

¶ 16. For a number of reasons, we cannot accept any of the rationales for finding a violation of the bylaws. In construing a zoning ordinance, "[w]e consider the whole of the ordinance and try to give effect to every part." *In re Vermont Nat'l Bank*, 157

---

[6] The Environmental Division mentioned the "numerous financial arrangements," and the "sum of appellants' financial arrangements," as factors. There is no explanation why the court found these factors relevant, and we discern none. Thus, we conclude that the court relied upon the numerous short-term rentals and the fact that appellants charged rent.

[7] Although the Environmental Division criticized the DRB decision and apparently refused to follow it, the court's impermanence factor and the DRB's requirement that the household unit regularly live together bear significant similarities. We note, however, that this factor, which is the centerpiece of the DRB rationale, appears to be less significant to the court's rationale.

Vt. 306, 312, 597 A.2d 317, 320 (1991). We do not conclude that these rationales consider the bylaws as a whole to discern the intent of the drafters or engage in narrow construction that will allow a landowner to know what is prohibited. As a result, even in light of the deference that we extend to the court's interpretation of the bylaws, we conclude that the Environmental Division committed clear error and reverse its conclusion.

¶ 17. We start with the recognition that having nonpaying overnight guests, whether family or friends, is a normal incident of use of a single-family home. We see no reason that this normal incident would depend upon the presence of the homeowner. Nor do we believe that it would depend on the length of the guest's stay. The permitted use is for a single-family dwelling defined as "[l]iving quarters with cooking, sleeping and sanitary facilities provided within a dwelling unit for the use of a single family maintaining a household." Zoning Bylaw § 8. As we stated above, appellants' structure clearly complies with the bylaw. Although the language of the definition relates more to the structure than the use of that structure, we agree with the Town that when the wording is used to define a permitted use, it must regulate the use. Before appellants rented the house, their use complied with the definition because there was no prohibition on having guests occupy the house. Appellants were the single family that maintained the household.

¶ 18. Thus, the issue reduces to whether the definition becomes inapplicable because appellants rent to tenants who use it for the same purpose as appellants.[8] Under appellants' interpretation, each renter is a single family that maintains a household during the period of the rental. The objection of the Environmental Division to that interpretation is that, taken as a whole, the use has changed from a personal use to a commercial use or to a mixture of both. Viewing the ordinance as a whole, we

---

[8] Although we ultimately agree with appellants' position, we do not agree with the argument that the case is controlled by *In re Sardi*, 170 Vt. at 624, 751 A.2d at 774, and *Vermont Baptist Convention v. Burlington Zoning Bd.*, 159 Vt. 28, 30, 613 A.2d 710, 711 (1992). In those cases, we held that zoning cannot be "based solely on the ownership rather than the use of the land." *Sardi*, 170 Vt. at 624, 751 A.2d at 774. Those cases involved attempts to distinguish between functionally identical usage based on the ownership arrangement. These are not holdings that zoning must be indifferent to a distinction between noncommercial and commercial usage. Here, of course, there was no change of ownership and the argument is about use.

cannot agree with that objection. The bylaws allow commercial uses in this zone: bed and breakfast, rooming and boarding house, and home offices. Indeed, the bylaws state that, for the purpose of defining a dwelling, a family is "one or more persons living as a household (dwelling) unit, *but not including* individuals or groups occupying rooming and boarding houses, clubs, motels or hotels." (Emphasis added.) The specific exclusion implies that "one or more persons living as a household" could, absent the exclusion, encompass transient and commercial living arrangements.[9] Given that the bylaws permit these uses, we see no reason to imply a prohibition on commercial activity in this particular permitted use. It is not the commercial nature of uses that defines the limits of this zone.

¶ 19. The Environmental Division appears to have held that it matters to the definition whether the tenants rent for a short term or a long term and whether the composition of the occupants is impermanent. We cannot square these considerations with the definition that we are interpreting. The definition requires occupancy by a family living as a household unit. If the renters are not the family for purposes of the definition, it does not matter whether the renters are present for a day or for a year. Their occupancy would be illegal. The Environmental Division seemed to conclude that, even if each rental group constituted a household, the aggregate occupancy of the rental groups did not constitute occupancy by a single household. We find nothing in the bylaws to support this conclusion. At any given time, the occupancy of the house was by a single household. If the Town meant to require more than this, it could easily have included something to that effect in the bylaws. Lastly, if there is a concern about impermanence of composition of each group, it would apply whether appellants were renting the property or using it themselves together with guests or for guests without them.

¶ 20. Again, in reading the bylaws as a whole, we are struck by the presence of bed and breakfasts and rooming and boarding

---

[9] We recognize, as the dissent explained in *Rutland Herald v. City of Rutland*, 2012 VT 26, ¶¶ 44-46, 191 Vt. 387, 48 A.3d 568 (Dooley, J., concurring and dissenting), that use of the term "including" or "not including" does not always mean that the general element — here, the household (dwelling) unit — encompasses the specific inclusion or exclusion. We must read the exclusion in context. Nothing in the context here would suggest that the exclusion is not part of the general element.

houses as permitted uses, even though all parties concede that appellants' rentals do not fit these uses. Interested parties have argued that appellants' tenants represent an intensity of use higher than that for rooming house occupants because such a house is limited to seven occupants and bed and breakfast occupants because such a facility is limited to eight occupants. Zoning Bylaws § 8. Despite the limitations, we find it incongruous to allow such uses and prohibit rental of single-family houses for any number of occupants.[10]

¶ 21. In reaching our conclusion, we are particularly affected by the requirement of narrow construction and the need for landowners to be able to ascertain the line between proper use of their property and illegal use. This is a violation proceeding that could result in large fines if we find that appellants' use was illegal. Apart from the question of support for the court's rationale in the language of the bylaws, we can find no ascertainable rules in its decision. As noted above, the court itemized a number of factors but created no bright lines for any of them and no specification of the chemistry among them. Each of the various arguments attempting to define why appellants' rental use was illegal may have resolved this case but created no usable rule to apply in the future. In our view, a careful landowner who wanted to avoid being fined would avoid renting to anyone irrespective of the tenants' usage or the duration of rental. To some extent, uncertainty is the cost of case-by-case adjudication, but it reinforces the need for legislative action to create workable solutions in areas of broad general standards. The Town could clearly prohibit appellants' use, but we cannot read the current bylaws as having done so.

¶ 22. Our reaction is heightened by the policy arguments. The interested-party-adjoining landowners and the Town both make arguments regarding why appellants' use is undesirable particularly when there is no limit on the number and characteristics of the renters. Since we are attempting to construe a municipal ordinance, these arguments are for the municipal governing body rather than the judiciary. We are not the body to resolve the

---

[10] There is another drafting point about treatment of these uses. The definition of rooming house is a building where more than two persons and fewer than eight persons for a fixed period of time are supplied with or charged for sleeping accommodations. Zoning Bylaws § 8. Under the Town's theory, providing a rooming house for two occupants would be illegal for no apparent reason.

conflicting interests of the landowner, the neighbors of the landowner, and the Town and all its citizens except under ascertainable standards adopted by the Town. In this case, we cannot find that there are such standards that prohibit this use of appellants' property.[11] Creating a bylaw that balances the interests of the landowner, other landowners nearby and the Town is the only proper way to address these interests and effects. Interpreting the existing bylaw to properly weigh the interests and fashion a balanced solution is well beyond our role.

*Reversed.*

---

[11] Although no party raised this issue, we do not exclude that the Town could regulate rental of vacation properties as an accessory use. Accessory uses are permitted in the residential shoreline district. Zoning Bylaws § 3.2.2.6. They are defined as uses "incidental and subordinate to the principal use." *Id.* § 8. Accessory uses are well-developed in zoning law, such that standards have developed. See *Town of Salem v. Durrett*, 480 A.2d 9, 11 (N.H. 1984).