STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|   |   |   |
|---|---|---|
| Burlington Airport Permit | { | Docket No. 93-7-12 Vtec |
| (Removal of Structures) | { | |
|   | { | |

## Decision on Cross-Motions for Summary Judgment

George A. Maille, Jr. (Appellant) appeals the issuance of 54 zoning permits to the City of Burlington and Burlington International Airport (BTV) for the demolition or removal of 54 vacant structures on properties owned by BTV. Appellant argues that the City of South Burlington Zoning Administrative Officer (ZAO), who originally granted the permits, acted beyond his jurisdiction by granting the permits without requiring the applications to undergo site plan approval by the South Burlington Development Review Board (the DRB). In his Statement of Questions, Appellant offered four questions for this Court's review. Subsequently, the City of Burlington, acting by and through BTV, moved for summary judgment on Appellant's four questions, as did Appellant and the City of South Burlington. We review these three motions in this Decision.

In this matter, Appellant appears pro se. The City of Burlington is represented by William F. Ellis, Esq. The City of South Burlington is represented by Amanda Lafferty, Esq. The three other interested persons in this matter, Kathleen M. Rohde, Katherine M. Boyle, and Deborah A. Marrier, have not submitted pleadings in response to the cross-motions under review in this Decision.

## Factual Background

For the sole purpose of putting the pending motion into context, the Court recites the following facts, which it understands to be undisputed unless otherwise noted:

1.  The City of Burlington owns BTV, which is located in the City of South Burlington.

2.  As part of its Airport Noise Compatibility Planning required by Federal Aviation Administration (FAA) regulations, BTV has, since the 1980s, developed Noise Compatibility Programs (NCPs), the first of which the FAA approved in 1990.

3.  BTV's NCPs recommend purchasing residential structures within a certain "noise contour" of the airport in an effort to help mitigate the impact of airport-generated noise on neighbors to BTV.

1

4. Between 1992 and 2007, BTV purchased a total of 59 homes within the 70 "day-night average" (dnl) noise contour of the airport.

5. After revising the NCP in 2008, BTV began acquiring between 10 and 20 homes per year within an expanded 65 dnl noise contour of the airport.

6. Once BTV acquires a home under the NCP and the sellers relocate, the home is vacated and cannot be permanently reoccupied for residential purposes.

7. BTV advertises homes vacated under the NCP for sale to be moved off-site. If there is no interest in moving the homes, BTV advertises the homes for deconstruction, salvage, or demolition.

8. Since the inception of the program, BTV has purchased approximately 121 homes through the NCP, and it has removed 66 of those homes without site plan or conditional use approval by the DRB.

9. BTV has an FAA-approved Airport Master Plan that envisions the future use of the land purchased by BTV under the NCP for purposes compatible with the airport. However, there are currently no formal development plans for the properties at issue in this case, beyond removal of the vacant structures and establishment of green space.

10. In February 2012, BTV applied to the City of South Burlington for permits to remove the vacant homes on 54 lots purchased under the NCP. All 54 lots are located within South Burlington's Residential 4 Zoning District (R-4 District), and all 54 homes were formerly used as either one-family or two-family dwellings.

11. In total, Applicant submitted 54 Zoning Permit Applications—one for each of the 54 lots.

12. Each of the 54 zoning permit applications calls for the demolition, deconstruction, or relocation of the 54 vacant homes and their associated improvements, with foundations demolished to two feet below grade; cellar holes filled; sewer and water lines capped; and turf established in place of the home.

13. On February 28, 2012, the ZAO issued each of the 54 zoning permits sought by BTV.

14. On March 13, 2012, Appellant filed an appeal with the DRB of the ZAO's decision to approve each of the 54 permits. After holding a public hearing on the appeal, the DRB upheld the ZAO's determination in a single decision issued on June 14, 2012.

## Discussion

Appellant appeals a decision by the DRB upholding the ZAO's issuance of 54 zoning permits to BTV for the demolition or removal of 54 vacant residential structures on 54 lots owned by BTV. Appellant presents four questions in his Statement of Question and essentially claims that the activities BTV proposes to perform on the 54 lots, for which BTV seeks permits, change the use of the lots to one that that requires site plan approval. See (Appellant's Mot. for Summ. J. at 6, filed Nov. 8, 2012.) Appellant requests that this Court, upon reviewing his four questions, grant summary judgment in his favor, conclude that BTV's proposed activities require site plan review, and remand this case to the DRB for such review. Id. In their cross-motions for summary judgment, the City of Burlington and the City of South Burlington challenge Appellant's claims and request that this Court find that no site plan approval is required under the LDR for BTV's proposed activities.

We will grant summary judgment to a moving party upon a showing that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). We must "accept as true the [factual] allegations made in opposition to the motion for summary judgment." Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted); see V.R.C.P. 56(c) (laying out summary judgment procedures). When considering cross-motions for summary judgment, we look at each motion individually and give the party opposing a motion the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Communications, 2009 VT 59, ¶ 5, 186 Vt. 332 (citing Toys, Inc. v. F.M. Burlington Co., 155 Vt. 44, 48 (1990)).

In this case, none of the three moving parties allege disputes of material fact. Instead, the cross-motions for summary judgment revolve around the proper interpretation of the LDR in the context of the zoning permit applications at issue. When interpreting municipal ordinances, we apply principles of statutory construction. In re Vt. Nat'l Bank, 157 Vt. 306, 312 (1991) (citing Blundon v. Town of Stamford, 154 Vt. 227, 229, 576 (1990)). Thus, our interpretation of an ordinance, like a statute, must be based on the intent of the drafters to the extent we can determine it. In re Toor, 2012 VT 63, ¶ 9 (citing In re Pierce Subdivision Appl., 2008 VT 100, ¶ 28, 184 Vt. 365). The definitions provided within an ordinance offer significant guidance in interpreting the intent of the ordinance drafters. See id. at ¶¶ 11, 17–19. To the extent that an ordinance is uncertain, however, such uncertainty "must be decided in favor of

the property owner," since zoning ordinances are "in derogation of common law property rights." In re Weeks, 167 Vt. 551, 555, 712 (1998) (quoting In re Vitale, 151 Vt. 580, 584 (1989)).

With these standards in mind, we consider the pending motions for summary judgment.

## I.     **Whether BTV's Proposed Removal of Homes Constitutes a Change in Use.**

Appellant's Question 1 asks "[w]hether the purpose for which this permit was required involves a change in use." (Appellant's Statement of Questions, filed Aug. 7, 2012.) In this case, BTV proposes to remove vacant dwellings on 54 lots it currently owns. The 54 lots are all located within South Burlington's R-4 District. The purpose of the R-4 District is "to encourage residential use at moderate densities that are compatible with existing neighborhoods and undeveloped land adjacent to those neighborhoods." LDR § 4.03(A). All uses not permitted or allowed as conditional uses within the R-4 District are prohibited. Id. The LDR defines "Use" as "[t]he specific purpose or activity for which a structure, building, or land is or may be designed, arranged, designated, or intended or for which a structure, building, or land is or may be occupied and maintained." LDR § 2.02. In this case, no party disputes that the 54 structures BTV proposes to remove are one- or two-family dwellings formerly put to residential use. One of the chief questions raised by Appellant is whether the removal of these structures constitutes a change in the use of the lots.

The LDR defines "change in use" as "[t]he modification of a use of a building or land, or the replacement of a use of a building or land with another use or uses, or the addition of a use or uses to a building or land, or the cessation of a use or uses of a building or land." Id. (emphasis added). According to the City of Burlington:

> Each of the 54 applications calls for the demolition, deconstruction or relocation of the vacant house and associated improvements on the property, with foundations demolished to two (2) feet below grade and cellar holes filled, sewer and water lines capped, and turf established to restore disturbed areas.

(City of Burlington's Statement of Undisputed Material Facts at 2, filed Nov. 7, 2012). No party disputes the City of Burlington's characterization of BTV's proposed activities on the 54 subject lots. Moreover, the purpose of BTV's proposed activities is to ensure that the lots are no longer used for residential purposes and that they lie vacant. Id. at 2–3. The City of Burlington acknowledges that the lots "may ultimately be used for purposes compatible with the Airport," pursuant to BTV's FAA-approved Airport Master Plan. Id. at 3.

4

Under the plain language of the LDR, we conclude that BTV's proposed removal of the 54 dwellings on the subject lots constitutes the cessation of the use of both the dwellings and the lots for either one- or two-family residential use. While it is not apparent at this time whether or when BTV will put the lots to another use, we need not make such a determination to find a "change in use" under LDR § 2.02. Because BTV's proposed activities will cease the one- and two-family residential use of the subject residential structures and lots, we find that BTV proposes to change the use of those structures and lots under the LDR. Accordingly, we **GRANT** summary judgment in favor of Appellant on Appellant's Question 1.

## II. BTV's Present and Future Use of the Properties and Whether the Proposed Removal of Homes Requires Site Plan Review.

Appellant's Question 2 asks "[w]hether the present use, or the proposed use, of the properties subject to the permit, are permitted or conditional uses in the R-4 zoning district." (Appellant's Statement of Questions, filed Aug. 7, 2012.) We first consider the properties' present use. The parties do not contest that subject properties were formerly used for residential purposes. BTV then purchased these properties. Although Appellant urges us to consider the owner of the property in categorizing the property's use, the regulation of land use based solely on the identity of the owner is not within the authority granted to a municipality under 24 V.S.A., Chapter 117, and land uses cannot be distinguished from each other based solely on the identity of the landowner. See In re Twin Pines Housing Trust & Dismas of Vt. Conditional Use, No. 95-7-11 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Apr. 26, 2012) (Walsh, J.); In re Appeal of Sardi, 170 Vt. 623, 624–25 (2000) (mem.)). Thus, BTV's purchase of the 54 properties in this case did not automatically change their use, even if BTV bought the properties intending to later put them to a new use. We find that the present use of the 54 properties remains one- and two-family dwellings, which are both permitted in the R-4 zoning district. See LDR Appendix C.

Appellant also asks whether the proposed use of the subject properties is permitted or conditional in the R-4 District. Appellant contends that removing the 54 homes at issue in this case changes the use of the land now owned by BTV from residential to "Airport uses" as defined in LDR § 2.02, which are not permitted in the R-4 District. In support of this argument, Appellant points out that BTV's proposal is part of an FAA-funded program "to reduce the number of individuals living near airports with high noise levels." (Appellant's Mot. for Summ. J. at 1, filed Nov. 8, 2012.) As Appellant states, "[a]ll of the propert[ies] slated for

demolition, and subject to the permit here on appeal, were acquired in accordance with Federal statute and FAA regulations enacted expressly for the purpose of serving the aviation industry." (Appellant's Mot. for Summ. J. at 3, filed Nov. 8, 2012.) Appellant also notes that a number of the 54 lots at issue in this case appear "on plans available through the South Burlington City website under the heading 'Vision 2030 Airport Master Plan Update.'" (Appellant's Statement of Undisputed Material Facts at 1, filed Nov. 8, 2012.)

We find that BTV's proposed removal of the 54 homes would not change the use of the 54 lots to "Airport uses." We first note that in interpreting the LDR, our definition of uses comes from the LDR, not FAA regulations or federal law. See Weeks, 167 Vt. at 554 ("We are bound by the plain language of the [ordinance], and if it 'resolves the conflict without doing violence to the legislative scheme, there is no need to go further . . . .'" (quoting Lubinsky v. Fair Haven Zoning Bd., 148 Vt. 47, 49 (1986)). The LDR defines "Airport uses" as: "Fixed- and rotary-wing operations together with retail sales and service operations related to public, private, and general aviation, including aircraft sales, repair and storage, commercial shipping and storage, restaurants, rental vehicles, and other uses designed to serve aviation passengers and industry." LDR § 2.02. Removing the 54 homes will create vacant land owned by BTV that is within a certain noise contour of the airport. Vacant land does not fall within the LDR's definition of "Airport uses." At this time, BTV has not yet proposed a new use for the 54 properties at issue in this case. Until BTV does so, this Court cannot evaluate whether the future use will be permitted or conditional in the R-4 District. When BTV does propose a new use for the subject properties, additional review, possibly including site plan review, will be required.

Thus, in answering Appellant's Question 2, we conclude that BTV's present use of the 54 subject properties is permitted within the R-4 District and that although BTV has applied to demolish or remove the 54 homes on the subject properties, it has not yet proposed a new use for the properties. We further conclude that contrary to Appellant's arguments in his motion for summary judgment, BTV's proposal to change the use of the properties by demolishing or removing the 54 one- and two-family dwellings does not require site plan approval under LDR § 14.03.

Under LDR § 14.03(A)(1), site plan approval is required prior to the issuance of a zoning permit in all districts for "[a]ny new use, change in use, or expansion of use in any district."

(emphasis added).  Because BTV's proposed activities constitute a change in use of the subject properties, BTV's zoning permit applications must undergo site plan review unless BTV's proposal is exempt from such review under LDR § 14.03(B).  In relevant part, § 14.03(B) exempts from site plan review one- and two-family dwellings on single lots, along with their "accessory structures, and related features such as decks, pools, sheds, and detached garages."  Id. § 14.03(B)(1)–(2).  In this case, BTV simply proposes to remove or demolish one- and two-family dwellings, the construction of which would not require site plan review under § 14.03.  Because BTV's activities will only affect one- and two-family dwellings, we find that BTV's proposal is exempt from site plan review under LDR § 14.03(B). [1]

We **GRANT** summary judgment on Appellant's Question 2 in favor of the City of Burlington and the City of South Burlington.  We hold that BTV's present use of the 54 properties is permitted in the R-4 District, that BTV has not yet proposed a new use for the properties, and that BTV's proposed change of use of the one- and two-family dwellings does not require site plan review under LDR § 14.03.

III.     **Whether BTV's Proposed Filling of Cellar Holes Triggers Site Plan Review Under LDR § 3.12.**

Appellant's Question 4 asks "[w]hether Section 3.12 of the South Burlington Land Development Regulations applies to the project for which the permit was issued."  (Appellant's Statement of Questions, filed Aug. 7, 2012.)  Under LDR § 3.12(A), "the placing on land of fill . . . in an amount equal to or greater than twenty (20) cubic yards, except when incidental to or in connection with the construction of a structure on the same lot, shall require the approval of the Development Review Board."  An application under § 3.12(A) requires the submission of a site plan, planned unit development, or subdivision plat.  LDR § 3.12(B)(1).  In this case, after removing the 54 homes, BTV proposes to demolish the foundations of the homes "to 2 feet below existing grade" and fill in the resulting cellar holes.  See South Burlington Exhibit B at 1.

In his motion for summary judgment, Appellant argues that if the applications at issue in this appeal involve the combined placement of 20 or more cubic yards of fill on the 54 lots, LDR § 3.12(A) applies. We need not reach the question of the amount of fill required to fill each or all of the cellar holes, however, as we find that the act of filling the cellar holes proposed by

---

[1]  Again, we note that if and when BTV proposes development plans for the properties at issue in this matter, site plan approval will be required absent an exemption from such review.

BTV is incidental to the construction of a structure on the same lot under the LDR and thus exempt from § 3.12.

For the placement of fill to be exempt from the review requirements of § 3.12, it must meet two elements. First, the filling must occur on a lot on which there is also activity recognized by the LDR as "construction of a structure." See id. The term "construction of a structure," when read in isolation, could be interpreted narrowly to exclude activities such as removing or demolishing a structure. The LDR's Definitions section, however, indicates that the drafters of the LDR intended the term to broadly encompass such activities. The LDR defines "Construction" as "[t]he act of adding to, altering, or extending an existing structure or the erection of a new principal or accessory structure on real property." Id. § 2.02. The LDR defines "Alteration," in relevant part, as

> Any act or process that changes one or more of the exterior and interior architectural features or the exit facilities of a structure, including, but not limited to, the erection, construction, reconstruction, <u>or removal of any structure</u>, . . . <u>or the removal of a building or structure from one location to another</u> . . .

Id. (emphasis added). Accordingly, BTV's proposal to demolish or remove the 54 homes is a proposal to alter those homes under LDR § 2.02, which constitutes "construction of . . . structure[s]" pursuant to LDR §§ 2.02 and 3.12.

The second criterion for the placement of fill to be exempt from review under § 3.12 is that the filling must be "<u>incidental to or in connection with</u> the construction of a structure on the same lot." (emphasis added). The parties do not dispute that BTV's sole purpose in placing fill on the lots is to fill in the cellar holes created by the demolition or removal of structures from the lots. Thus, it is clear that the placement of fill on each of the 54 lots will be in connection with <u>and</u> incidental to the demolition of the structures on each of the lots.

We therefore conclude that BTV's proposed placement of fill on the 54 lots at issue in this case is incidental to and connected with the construction of structures on those lots, and as such, is exempt from site plan or other review under LDR § 3.12. Accordingly, we **GRANT** summary judgment on Appellant's Question 4 in favor of the City of Burlington and the City of South Burlington.

## IV. Applicability of 24 V.S.A. § 4416.

Finally, Appellant's Question 3 asks "[w]hether the exception for one- and two-family dwellings in 24 V.S.A. Section 4416 applies to the demolition or removal of one- and two-family structures." In response to this question, we note that 24 V.S.A. § 4416 simply serves as the

8

enabling statute granting municipalities the discretion to require site plan approval. This grant of power, however, does not allow municipalities to require site plan review for the approval of one- and two-family dwelling uses. Whether or not § 4416 permits a municipality to require site plan review for the demolition or removal of one- or two-family dwellings does not need to be decided in this proceeding. This is because, as set forth above, we conclude that the LDR does not require site plan review for the demolition or removal of one- or two-family structures.

Thus, we **GRANT** summary judgment on Appellant's Question 3 in favor of the City of Burlington and the City of South Burlington by concluding that we cannot require site plan review for BTV's proposed activities, as such review is not required by the LDR, regardless of the enabling statute 24 V.S.A § 4416.

### Conclusion

For the reasons stated above, we **GRANT** summary judgment in favor of Appellant on Appellant's Question 1, and we **GRANT** summary judgment in favor of the City of Burlington and the City of South Burlington on Appellant's Questions 2, 3, and 4. We conclude that under the LDR, BTV's permit applications require only a zoning permit and that the demolition or removal of the 54 homes at issue in this case is permitted in the R-4 District and need not undergo site plan review. This Decision concludes the pending appeal.

A Judgment Order accompanies this Decision.

Done at Burlington, Vermont this 20th day of March, 2013.

Thomas G. Walsh, Environmental Judge

9