STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

|  | } |  |
|---|---|---|
| <u>In re Howard Center Renovation Permit</u> | } | Docket No. 12-1-13 Vtec |
| (Appeal of So. Burlington School District) | } |  |
|  | } |  |

## Decision on Cross-Motions for Summary Judgment

HowardCenter, Inc. (HowardCenter or Applicant) seeks to open a methadone clinic at 364 Dorset Street, South Burlington in a building already permitted as a medical office. The South Burlington Zoning Administrative Officer (ZAO) approved Applicant's permit application for interior renovations of the building and the continued use of the building as a medical office. The South Burlington School District (the District) appealed that permit to the South Burlington Development Review Board (DRB). The DRB denied the appeal and affirmed the issuance of the permit. The District now appeals that decision to this Court. The District is represented by its attorneys Pietro J. Lynn, Esq. and Sean M. Toohey, Esq. HowardCenter is represented by Franklin L. Kochman, Esq.

## Factual Background

For the purpose of putting the pending motions into context we recite the following facts which are undisputed unless otherwise noted:

1. On August 6, 2012 HowardCenter submitted a zoning permit application for interior renovation of an existing medical office located at 364 Dorset Street in the City of South Burlington, Vermont.

2. 364 Dorset Street is one of several buildings located on a 2.2 acre parcel (the Property).

3. The building located at 364 Dorset Street is part of a multi-unit multi-use development project that was originally approved as a Planned Unit Development (PUD) on August 1, 2000. The PUD has been amended multiple times. The PUD approvals include approval for a medical office use.

4. Aside from the present appeal, there are no pending appeals of zoning permits, the original PUD approval or subsequent amended PUD approvals, or other permits or approvals relating to the Property.

1

5. The City of South Burlington Land Development Regulations, originally adopted May 12, 2003 and as amended May 2012 (LDR or Regulations) apply to HowardCenter's permit application.

6. The Property is located within the Central District 2 (CD 2) Zoning District. "Office, Medical" is a permitted use in the CD 2 district and "social services" are permitted in the CD 2 district after conditional use review.

7. HowardCenter proposes to use the building for the medication assisted treatment of patients suffering from opioid dependence. As part of this treatment physicians and nurses will perform medical examinations and administer methadone or buprenorphine to the patients.

8. Treatment will also include mandatory individual and group counseling sessions addressing a variety of topics, including but not limited to, substance abuse counseling and case management.

9. HowardCenter will employ at least one medical doctor, at least three nurses, several lab technicians, at least 10 substance abuse clinicians, several clinical staff supervisors, several case managers, a consulting psychiatrist, and a consulting psychologist.

10. A patient must be diagnosed with opioid addiction in order to receive any treatment at the proposed HowardCenter clinic.

11. Opioid addiction is best described as a neurohumeral disorder of the brain.

12. According to the Vermont Agency of Human Resources, "medication assisted treatment (MAT) is the use of medication, in combination with counseling and behavioral therapies, to provide a whole-patient approach to the treatment of substance abuse disorders."

13. All patient care and treatment at the proposed clinic will be under the supervision and direction of a physician.

**Motions for Summary Judgment**

The District moved for summary judgment on three of the issues presented in its Statement of Questions: first, whether the Project is within the Traffic Overlay District, requiring Applicant to perform a traffic analysis; second, whether the Project is a change from a permitted use (medical office) to a conditional use (social services), requiring conditional use review; and finally, whether the project is a change in use or expansion of use, requiring site plan review.

2

The District asks the Court to remand to the ZBA for all three of these further reviews. Applicant filed a cross motion for summary judgment, asking for judgment in its favor on these three questions and for judgment in its favor on the remaining two questions presented.

Applicant notes that the only question left unresolved by the District's motion relates to the District's safety concerns associated with the proposed methadone clinic and its close proximity to the District schools. The District argues that there are disputed facts regarding the proposal's safety impacts and that those impacts should be considered before Applicant is issued a permit. Applicant argues that if the project is a permitted use and not a change or expansion of use, then the ZAO, the DRB, and this Court on appeal cannot consider safety as there is no discretion to deny or condition the permit.

The court will grant summary judgment if a moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). When considering cross-motions for summary judgment, the court looks at each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332. The court also accepts as true all factual allegations made in opposition to a motion for summary judgment so long as they are supported by "specific citations to particular parts of materials in the record . . . ." V.R.C.P. 56(c)(1)(A). Both parties have submitted statements of undisputed material facts with supporting affidavits and other evidence.

## I.      Change in Use or Expansion of Use Requiring Conditional Use or Site Plan Review

We first address whether the Project is a change in use. There are no material facts in dispute regarding this question. A medical office is a permitted use in the CD 2 zoning district and a social services use is only permitted subject to conditional use review. LDR Appendix C. The District argues that the Project is a change from a medical office to a social services use, or, alternatively, that it fits the definition of both, and therefore must obtain a conditional use permit.

We interpret a zoning ordinance using the familiar rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." Id. Where the plain meaning of the ordinance is clear it must be enforced and no further

3

interpretation is necessary.  <u>Vermont Alliance of Nonprofit Orgs. v. City of Burlington</u>, 2004 VT 57, ¶ 6, 177 Vt. 47 (citing <u>Hill v. Conway</u>, 143 Vt. 91, 93 (1983)).

The Regulations define "use" as "[t]he specific purpose or activity for which a structure, building, or land is or may be designed, arranged, designated, or intended or for which a structure, building, or land is or may be occupied and maintained."  LDR § 2.02 at 2-39.  The prior use of the building was "Office, Medical" defined as "[a]ny establishment where human patients are examined and treated by doctors, dentists or other medical professionals but not hospitalized overnight.  Medical office may include as an ancillary use the assembly, fitting, testing and sale of products directly related to the medical service provided in the same establishment."  <u>Id</u>. at 2-25.  Social services are defined as "[e]stablishments providing assistance and aid to those persons requiring counseling for psychological problems, employment, learning disabilities, and/or physical disabilities. This includes organizations soliciting funds for these and related services. May include on-site ancillary services, such as child care, but shall not include accommodations for overnight stays."  <u>Id</u>. at 2-35.  Finally, the Regulations define "Change of Use" as "[t]he modification of a use of a building or land, or the replacement of a use of a building or land with another use or uses, or the addition of a use or uses to a building or land, or the cessation of a use or uses of a building or land."  <u>Id</u>. at 2-8. Applying the plain language of these definitions to the proposed project, we conclude that Applicant's proposal is a Medical Office use and not a change of use.

HowardCenter applied for its permit as a "Medical use."  It is undisputed that HowardCenter proposes to use the building for medication assisted treatment of patients suffering from opioid dependence.  As part of this treatment physicians and nurses will perform medical examinations and administer methadone or buprenorphine to patients. Treatment also includes mandatory individual and group counseling sessions.  The counseling is an essential part of the overall treatment of patients' opioid dependence.  As the District put it, "the sum balance of the services provided at the methadone clinic are a combination of medical and social services based on the nature of the treatment."  (Appellant's Reply to Mem. in Opp. to Mot. for Summary Judgment and Opp. to Applicant's Cross-Motion for Summary Judgment at 12, filed Sept. 30, 2013).

Even following the District's description, the "specific purpose or activity" for which the building will be occupied and maintained is the *treatment* of human patients for opioid

dependence, and that *purpose* is met through both medicine (including regular examinations and treatment by doctors, nurses, and other medical professionals) and counseling. As Applicant points out, and the District has not disputed, unless a patient has been diagnosed with opioid addiction and has voluntarily elected to undergo treatment, he cannot receive counseling services at the proposed office. Thus, even under the District's interpretation, the specific purpose or activity is the medication assisted treatment of opioid dependence. Viewing all of the facts in the light most favorable to the District and applying the plain meaning of the LDR definitions, Applicant's project is a medical office use. Therefore, conditional use review is not required.[1] We **DENY** the District judgment and **GRANT** HowardCenter judgment on Question 2.

Under the Regulations, site plan review is required for "[a]ny new use, change of use, or expansion of use in any district" unless specifically excluded from site plan review. LDR § 14.03(A). Importantly, "specifically excluded from the provisions [requiring site plan review] are . . . [r]enovations that are one hundred percent (100%) internal to an existing building or structure." Id. at 14.03(B). It is undisputed that Applicant applied for a permit for 100% interior renovations. Therefore, regardless of whether Applicant proposes a medical office use that is an "expansion" of the prior medical office use, no site plan review is required. We therefore **DENY** the District judgment and **GRANT** HowardCenter judgment on Question 3.

Question 4 of the District's Statement of Questions is also resolved by a finding that there is no change in use. Question 4 asks:

> Whether as a result of the change in use, the proposed HowardCenter methadone clinic at 364 Dorset Street is permitted under the terms of the August 1, 2000 Planned Unit Development ('PUD') without approval from the South Burlington Development Review Board, and whether such approval is required before a permit can be issued LDR § 17.02.

Because there is no change in use, no review of the PUD is necessary. Although the Applicant did not specifically mention this Question in the cross-motion for summary judgment, it did ask for summary judgment on all questions on appeal and asked us to dismiss

---

[1] We also note that even if the project has multiple specific purposes, including social services, that any ambiguity regarding which use designation applies to the project must be resolved in favor of HowardCenter. See Appeal of Weeks, 167 Vt. 551, 555 (1998) (stating that zoning ordinances are in derogation of property rights and ambiguities must be decided in favor of the property owner); see also In re Toor, 2012 VT 63, ¶ 16, 192 Vt. 259 (noting that in finding a violation of zoning bylaws a decision maker must "engage in narrow construction that will allow a landowner to know what is prohibited").

the appeal. Based on the clear language of the Question, and having found there is no change in use, we find in Applicant's favor on this question also. We therefore **GRANT** HowardCenter judgment on Question 4.

## II.    Application of Traffic Overlay District and Traffic Study Requirements

Question 1 of the District's Statement of Questions asks whether the project property is located within the Traffic Overlay District and whether it therefore requires a traffic study under the provisions of the LDR. The physical location or layout of the Property is undisputed. The parties only dispute how the LDR applies. As such, resolution of this issue is appropriate on summary judgment. The parties assert that the Regulations are ambiguous regarding whether the subject parcel is within the TOD. The District argues that certain language describing Zone 3 of the TOD clearly includes the subject parcel. Applicant argues that the Overlay District Map clearly excludes the subject parcel from Zone 3 of the TOD.

Before determining whether the project lies within Zone 3 of the Traffic Overlay District (TOD) we consider whether the proposed project triggers the requirements of the Traffic Overlay District in the first place.

The purpose of the TOD is stated as follows:

> It is the purpose of the Traffic Overlay District to provide a performance based approach to traffic and access management associated with development and redevelopment of properties in high traffic areas of the City. It is the further purpose of the Traffic Overlay District to provide a means by which the allowable uses and the arrangement and intensity of uses on a given parcel may be regulated, above and beyond District regulations, based on traffic generated and impacts on City access management goals. It is the further purpose of the Traffic Overlay District to provide incentives to improve site design and access management during the development and redevelopment process, in keeping with the goals and objectives of the City's Comprehensive Plan.

LDR § 10.02(A). The LDR further states that no permit, whether for permitted or conditional use, should be issued except in accordance with the requirements of the TOD. Id. at § 10.02(C) & (D). The Regulations specifically pertaining to the TOD provide no express statement of how the traffic review is triggered. The application before us does not seek new permitted or conditional use approval nor does it require an amendment to the existing use approval. Further, the application does not seek or require an amendment to the existing PUD approval(s). Rather, the application seeks approval of interior renovations exceeding five

6

thousand dollars in construction costs. Pursuant to the LDR, we conclude that a traffic study is not required under these circumstances.

This conclusion is supported by the purpose of the TOD and its traffic review factors. The TOD requires that the traffic generated by a project not exceed the maximum allowable traffic (the traffic budget) for the specific overlay district. The traffic budget is calculated without regard to the specific use, and therefore, even a change in use will not alter the traffic budget. Rather, the traffic budget is calculated by multiplying the size of the lot by the applicable traffic overlay district's maximum traffic generation rate. Id. at § 10.02(F)(1).

In estimating the traffic generated by a project, the Regulations mandate that the Trip Generation Manual published by the Institute for Traffic Engineers (ITE) be used. Id. at § 10.02(F)(2). The Regulations state that in using the ITE manual to estimate traffic one must choose an "independent variable." Id. at Appendix B.2.

> The independent variable is the characteristic of the proposed project that is used to estimate the project's traffic generation. For many uses the ITE manual gives a choice of independent variables that can be used. For instance, for office buildings one can use the gross building floor area or the number of employees as an independent variable. For the purposes of these land development regulations it is recommended that a primary measurement be used as the independent variable, not a derived measurement. For instance, for office buildings the floor area is a primary measurement, whereas the number of employees is generally an estimate based on the floor area. The independent variable should be easily verifiable and should be related to the land use type, not to the characteristics of the tenant/operator.

Id. The Regulations' focus on easily verifiable primary measurements and specific disregard of the characteristics of the tenant/operator indicate that the LDR drafters did not intend for the TOD requirements to apply to interior renovations or tenant changes, absent a change in the use. Under the Regulations, then, it is clear that without a change in lot size, an increase in the gross building floor area or some other "primary measurement," or a change in "land use type," there is no trigger for a traffic study. Where there is no proposed change in use, a permit for 100% interior renovations requires neither site plan review nor a showing of compliance with the TOD requirements.[2] We therefore conclude that a traffic study pursuant to the TOD is not

---

[2] The fact that a traffic study under the TOD requirements was never done for this property is not before the court. If the property is, in fact, within the TOD and no traffic study was performed, the time to appeal the permit issuance for the construction of a medical office (as part of a Planned Unit Development) in this location has long since passed. See 24 V.S.A. §§ 4465 & 4471. The underlying PUD approval and permit for the existing medical office cannot now be challenged in this appeal. See 24 V.S.A

required by the application before the Court. Because of our conclusion, the Court need not resolve the alleged ambiguity in the Regulations regarding whether the property lies within Zone 3 of the Traffic Overlay District.[3] We **GRANT** judgment to HowardCenter on Question 1.

### III.    Consideration of General Safety Concerns

Applicant filed a cross-motion for summary judgment in its favor on the District's final Question: "Whether safety concerns relative to traffic, impaired driving, and crime relative to the location of the proposed HowardCenter methadone clinic at 364 Dorset Street are permissible considerations under the LDR and whether such issues must be reviewed and considered before a permit can be issued LDR § 17.02." This presents a question of law. The District points out that there are significant factual disputes as to the proposed clinic's impact on area safety. We agree with Applicant, however, that if safety concerns are not permissible considerations as a matter of law then the factual dispute is not material to the outcome of the case, and therefore, summary judgment on this question is appropriate.

The extent to which the project will create any unsafe conditions for the District's 1,400 students is highly contested by the parties. Both sides presented evidence to the DRB about safety and filed affidavits and other evidence with us. Applicant argues that as with the operations of its other facilities, the proposed project will not create any unsafe conditions. The District argues that locating the methadone clinic so near the District's two schools creates safety risks pertaining to impaired drivers, increased crime, and inappropriate patient/student contact. While we are not unsympathetic to the issues raised by the District, we find no legal grounds for the DRB, or this Court on appeal, to consider these general safety concerns in reviewing HowardCenter's permit application for interior renovations.

By statute, the Zoning Administrative Officer "shall administer the bylaws literally and shall not have the power to permit any land development that is not in conformance with those bylaws." 24 V.S.A. 4448(a); LDR § 17.01. Literal application of the zoning bylaws also requires

---

§ 4472(d) (providing that upon failure to appeal, all interested persons are bound by that decision and shall not contest directly or indirectly that decision); See also In re Musty Permit, 2012 VT 42, ¶¶ 4–6, 191 Vt. 483 (citing 24 V.S.A. § 4472(a)) (holding that a party cannot collaterally attack an underlying permit that was not appealed).

[3] We also need not consider HowardCenter's argument that application of the TOD to the parcel for the first time under these circumstances would constitute unlawful discrimination under the Americans with Disabilities Act, the Rehabilitation Act of 1973, the United States Constitution, and/or the Vermont Constitution.

that, absent a specific grant of authority from the regulations or statute, the administrator has no discretion to deny or condition a permit for a project that is in conformance with all regulatory requirements. Where an applicant proposes a permitted use and satisfies the specific dimensional and other requirements of the zoning district, the ZAO must issue the permit. The District makes no argument as to how the proposed office fails to satisfy the requirements of the Regulations apart from the absence of the three additional levels of review discussed above which we have concluded are inapplicable to the present application.

To treat the proposed methadone clinic differently from other medical office uses would be to consider the identity of the operator beyond the type of land use. We have specifically held that in considering land use applications the body administering the Regulations should not consider the identity of the landowner. In re Twin Pines Housing Trust & Dismas of Vermont Conditional Use, No. 95-7-11 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Apr. 26, 2012) (Walsh, J.); see also In re Sardi, 170 Vt. 623, 624 (2000) (noting that "permitting regulation of property based solely on the ownership rather than the use of the land . . . is inconsistent with the authority that the Legislature has granted to municipalities"). We therefore need not consider Applicant's argument that treating a methadone clinic differently from other medical uses violates the American's with Disabilities Act or the Rehabilitation Act of 1973, as we find that the principles of land use law do not permit consideration of the identity of the operator.

In adopting the LDR, the City determined that medical offices are permitted as of right in the Central District 2 and defined "Office, Medical" broadly. The City could have distinguished among types of medical offices based on the particular safety concerns they might present, such as communicable disease or patient sedation. The City could have required additional review of medical offices within a certain radius of schools or within the zoning districts that contain the city schools. The Regulations, however, do none of this. The Regulations plainly allow a medical office use as a matter of right in the Central District 2 zoning district. This legislative determination must be enforced according to its plain language and meaning. As such, we agree with Applicant that the general safety concerns raised by the District cannot be considered as part of Applicant's permit application for 100% interior renovations. We therefore **GRANT** judgment to HowardCenter on Question 5.

## Conclusion

For the reasons detailed above we conclude that the proposed methadone clinic is a medical office use and therefore is not a change of use requiring conditional use approval. The renovations are 100% internal and are therefore explicitly exempted from site plan review. Moreover, no traffic study is required by the Regulations where there is no change in use or physical expansion of the building. As there is no change in use of the existing medical office building, review of the Planned Unit Development (PUD) approval is not necessary. Because a medical office use is permitted as of right in the CD 2 zoning district and no further development review is needed for the proposed project, the general safety concerns raised by the District cannot be considered. Therefore, we **DENY** the South Burlington School District's motion for summary judgment on questions 1, 2, and 3 of its Statement of Questions and **GRANT** summary judgment in favor of HowardCenter, Inc. on Questions 1, 2, 3, 4, and 5.

A Judgment Order accompanies this opinion. This Decision concludes the pending appeal.

Done at St. Albans, Vermont this 12th day of November, 2013.

 

Thomas G. Walsh, Environmental Judge