STATE OF VERMONT

SUPERIOR COURT
Vermont Unit

ENVIRONMENTAL DIVISION
Docket No. 34-3-13 Vtec

Brisson Gravel Extraction Application

DECISION ON MOTION

Brisson Stone, LLC, Michael Brisson, and Allan Brisson (Applicants) seek to develop a "gravel extraction operation" (the project) in the Town of Monkton, Vermont (the Town). Applicants submitted a zoning permit application on January 11, 2012 to the Town of Monkton Development Review Board (the DRB). After numerous public hearings and deliberative sessions between March 27, 2012 and January 22, 2013, the DRB formally denied Applicants' application and issued its written decision on February 26, 2013. On March 26, 2013, Applicants timely filed a notice appealing the DRB's denial of its application. On April 24, 2013 Claudia Orlandi timely filed notice of cross-appeal in the matter.

Concurrent with their appeal of the DRB's decision, Applicants initiated a separate action in this Court regarding their application. In that action, Docket No. 24-2-13 Vtec, Applicants filed a motion for declaratory judgment, arguing that the project was approved as a matter of law under the legal doctrine of "deemed approval."[1] This Court disagreed and denied Applicants' declaratory judgment motion on January 30, 2014. See Brisson Stone LLC et al. v. Town of Monkton, Docket No. 24-2-13 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div, Jan. 30, 2013) (Walsh, J.). Having filed a motion to stay this appeal pending resolution of the action for deemed approval, Applicants filed a Statement of Questions on February 20, 2014 and a Motion to Amend those questions on May 2, 2014.

---

[1] Applicants filed a separate action, Brisson Stone LLC; Allan Brisson; and Michael Brisson v. Town of Monkton, Docket No. 24-2-13 Vtec, (Vt. Super. Ct. Envtl. Div, Feb. 28, 2014) (Walsh, J.), which the Court handled in a coordinated fashion pursuant to V.R.E.C.P. 2(d). This Court held that the DRB hearing(s) in this matter were adjourned at the close of the January 22, 2013 hearing and that the DRB's February 26, 2013 denial of Applicants' application was timely issued within the 45-day statutory period. Id. at 7.

Pending before the Court are three motions in this appeal. The first is Applicants' motion to amend their Statement of Questions, filed pursuant to the Court's order during an April 21, 2014 status conference. The second motion we consider is Applicants' motion to dismiss Ms. Orlandi's cross-appeal. Finally, Ms. Orlandi moves for summary judgment. In her motion, Ms. Orlandi argues that Applicants' proposed activities are not authorized under the Monkton Zoning Regulations (the Regulations). We address each motion in turn.

**Factual Background**

For the sole purpose of putting the pending motion into context, the Court recites the following facts which it understands to be undisputed:

1. Applicants applied for a permit for a gravel extraction operation in the Town of Monkton, Vermont on January 11, 2012. The application was referred to the DRB on January 24, 2012.

2. Applicants property is located in the R-5 Rural Agricultural zoning district.

3. Gravel extraction is a permitted use in any zoning district within the Town. A public hearing and the approval of a rehabilitation plan are required.

4. The Town Zoning Administrator (ZA) denied the application on February 9, 2012. Applicants appealed that denial to the DRB on February 22, 2012. The DRB analyzed, as a preliminary issue, whether the application should be denied because Applicants' proposed use was not a gravel extraction operation but was instead a quarrying operation.

5. The DRB held the first full public hearing on April 24, 2012. This hearing was continued to May 22, 2012. The DRB specifically asked Applicants and other interested parties to be prepared to discuss the difference between a gravel extraction operation and a quarrying operation.

6. At the conclusion of the May 22 hearing, the hearing was continued to July 24, 2012.

7. No testimony was taken at the July 24 hearing. The hearing was continued to August 28, 2012.

8. At the August 28 hearing, the DRB took evidence and testimony. The August 28 hearing was continued to October 23, 2012.

9. In a September 16, 2012 letter, the DRB indicated its hope and intent that it would be able to decide the discrete issue of whether the proposal was a permitted gravel extraction operation following the October 23 hearing.

10. At the October 28 hearing the DRB took evidence and testimony. Near the end of the hearing, DRB Chair Peter Close suggested the hearing on the application be adjourned and a decision rendered within 45 days. After further discussion, the DRB elected not to adjourn the hearing but instead to continue it to a date certain. At the end of the hearing the DRB unanimously voted to continue the public hearing on the application to November 27, 2012.

11. The DRB notified the parties that it would be unable to reach a decision before the November 27 hearing and that it would therefore officially open the hearing at its scheduled time and then continue it to a date certain. The November 27 hearing was continued to January 22, 2013.

12. On January 7, 2013 Applicants questioned whether its application should be deemed approved because of the time that had elapsed between the October 23, 2012 hearing and the January 22, 2013 hearing. Applicants argued that the DRB adjourned the hearing at the October 23 hearing and its failure to issue a decision within the statutory period amounted to deemed approval of its application. The DRB responded that it had not adjourned the hearing on the application until the January 22, 2013 hearing and that the statutory period therefore did not expire until 45 days after that hearing.

13. At the January 22, 2013 hearing the DRB took evidence and testimony. Evidence admitted at that hearing included multiple letters and documents submitted by Applicants to the DRB between the October 23, 2012 and January 22, 2013 hearings. At the conclusion of the hearing, the DRB adjourned the hearing and voted to deny the application because Applicants' proposed gravel extraction operation was not a permitted use under the Zoning Regulations.

14. On February 26, 2013 the DRB issued its formal written decision denying Applicants' application.

15. Applicants filed a separate action in this Court requesting declaratory judgment on the question whether the DRB failed to issue its decision within the 45-days statutorily proscribed in 24 V.S.A. §4464(b)(1). This Court denied that motion on January 30, 2014.

3

16.    Applicants timely appealed the DRB's denial of the permit application on March 26, 2013 and filed a separate request for a declaratory judgment action on whether the DRB failed to issue a decision on Applicants' application within the statutory time period and therefore granted "deemed approval."

17.    Claudia Orlandi filed notice of cross-appeal in the matter on April 24, 2013 pursuant to the Rule 5(b)(2) of the Vermont Rules of Environmental Court Proceedings (V.R.E.C.P).

18.    Applicants filed a motion to dismiss Ms. Orlandi's cross-appeal on May 7, 2013 for lack of standing.  Ms. Orlandi responded to that motion on May 20, 2013.

19.    This Court denied Applicants' motion for declaratory judgment on the issue of "deemed approval" on January 30, 2014 finding that the DRB hearing(s) in the matter were adjourned at the close of the January 22, 2013 hearing and that the DRB's February 26, 2013 denial of Applicants' application was timely issued within the 45-day statutory period.  See Brisson Stone LLC et al. v. Town of Monkton, Docket No. 24-2-13 Vtec, slip op. at 9 (Vt. Super. Ct. Envtl. Div, Jan. 30, 2013) (Walsh, J.).

20.    It is undisputed that the project would involve the drilling and blasting rock ledge and then crushing of rock into unconsolidated gravel, and not the removal of naturally occurring gravel deposits.

**Motion to Amend Statement of Questions**

**I.    Standard of Review**

   "Like motions to amend a complaint under V.R.C.P. 15, motions to amend a [Statement of Q]uestions are to be liberally granted . . . ."  In re Ridgewood Estates Homeowners' Ass'n, No. 57-4-10 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Jan. 26, 2011) (Wright, J.).  Motions to amend a Statement of Questions are therefore typically granted when "neither frivolous nor made as a dilatory maneuver or in bad faith."  Verizon Wireless Barton Act 250 Permit, No. 6-1-09 Vtec, slip op. at 11 (Vt. Envtl. Ct. Feb. 2, 2010) (Durkin, J.) (quoting In re Guardianship of LB., 147 Vt. 82, 84 (1986)).  When considering a motion to amend the statement of questions, the Court will contemplate whether there has been undue delay or bad faith by the moving party, whether the amendment will prejudice other parties, and whether the amendment is futile.

4

<u>Colby v. Umbrella, Inc.</u>, 2008 VT 20, ¶ 4, 184 Vt. 1; <u>In re Huntington Remodeling Application</u>, No. 210-10-07 Vtec, slip op. at 4–5 (Vt. Envtl. Ct. Nov. 5, 2008) (Durkin, J.).

## II.      Statement of Questions

Concurrent with this appeal, Applicants initiated a separate but related action for a declaratory judgment on the issue of whether their zoning permit application was "deemed approved" by operation of law.  One week after initiating these actions, but before filing a Statement of Questions in this appeal, Applicants filed a motion to stay the appeal of the DRB's decision pending resolution of the action for deemed approval.  Upon resolution of that matter in February 2014, Applicants filed their Statement of Questions.  Following an order issued during a status conference on April 21, 2014, Applicants filed Motion to Amend those Questions on May 2, 2014.

Applicants filed the pending motion to amend their Statement of Questions under order of this Court and at the earliest stages of the case.  The parties have yet to begin discovery and have ample time and opportunity to address the questions as amended.  Further, Ms. Orlandi has not argued that she will be prejudiced by the changes.  For these reasons, we find the motion to amend was filed in a timely manner, in good faith, and does not prejudice any party.  We therefore **GRANT** Applicants' Motion to Amend their Statement of Questions.

### Motion to Dismiss Cross-Appeal

## I.      Standard for Dismissal

This Court's jurisdiction extends only to cases and controversies raised by parties with standing.  See <u>Bischoff v. Bletz</u>, 183 Vt. 235 (2008); <u>Parker v. Town of Milton</u>, 169 Vt. 74, 77 (1998).  We review motions for dismissal based on standing under Rule 12(b)(1) of the Vermont Rules of Civil Procedure, which governs motions to dismiss for lack of subject matter jurisdiction.  <u>In re Goddard College Conditional Use</u>, No. 175-12-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 5, 2012) (Walsh, J.).

## II.      Legal Issues Raised in the Motion to Dismiss

Rule 5(b)(2) of the Vermont Rules of Environmental Court Proceedings (V.R.E.C.P.) governs cross-appeals before this Court.  Following a timely notice of appeal, "any other person entitled to appeal may file a notice of appeal" within the statutorily proscribed time limit.

V.R.E.C.P. 5(b)(2).  A party is entitled to appeal a municipal panel's act or decision to this Court if they are an interested person, as defined in 24 V.S.A. § 4465, and they have participated in the proceedings below, as defined in 24 V.S.A. § 4471.  10 V.S.A. § 8504(b)(1).

Applicants do not challenge Ms. Orlandi's status as an interested person, nor her participation in the proceedings below.  Rather, they challenge her right to file a cross-appeal in a matter that they allege is not adverse to her interest, to file a Statement of Questions in conjunction with her cross-appeal, and to file a cross-appeal in a matter that is not ripe for adjudication.  We address each argument in turn.

### A.    Standing to File a Cross-Appeal

Following a timely notice of appeal, Rule 5(b)(2) permits any other party entitled to appeal the act or decision at issue to file a cross appeal in this Court.  An appeal, or cross-appeal, is the exclusive remedy for an interested person that has participated in the proceedings below.  24 V.S.A. § 4472(a).

Applicants allege that Ms. Orlandi is not entitled to cross-appeal the DRB's decision because the decision below was not adverse to her interests.  Applicants' interpret V.R.E.C.P. 5(b)(2) to limit the right to cross-appeal a DRB decision to those parties with standing to appeal the decision under 24 V.S.A. § 4472.  They allege that read in conjunction with section 4472(a), the Rule's reference to "any other person entitled to appeal" limits the right to file an appeal in this Court to decisions that are "adverse" to the party.  This interpretation of section 4472(a) is, however, misguided.  Section 4472(a) authorizes appeals to this Court from "adverse decisions" rendered in appeals to the appropriate municipal panel under section 4465.  It does not limit appeals to decisions that negatively impact an interested party's interests.  A party with standing may appeal a favorable decision because they disagree with the reasoning.  To hold otherwise would be to allow an appellant to limit the scope of the appeal and would prevent interested persons from participating in appeals in order to protect their interests in a de novo trial.  Because Ms. Orlandi is an interested party, she participated in the proceedings below, and her cross-appeal was timely, she is entitled to file a cross-appeal under Rule 5(b)(2), regardless of whether the decision at issue on appeal is adverse to her interests.

6

**B.      Statement of Questions**

In addition, Applicants allege that Ms. Orlandi is not entitled to file a statement of questions. They argue that Ms. Orlandi is an interested party, not an appellant, and that only appellants are entitled to file a statement of questions. Because Ms. Orlandi is entitled to file a cross-appeal, however, and timely filed that appeal in this Court, she is required to file a statement of questions within 20 days of filing her cross-appeal. Reporter's Notes, V.R.E.C.P. 5(f). Ms. Orlandi's Statement of Questions is therefore appropriately before the Court.

**C.      Ripeness**

Finally, Applicants allege that Ms. Orlandi is not entitled to file a cross-appeal because the matter is not ripe for adjudication. A matter is appealable to this Court once a municipal panel has acted or rendered a decision. V.R.E.C.P. 5(a); 24 V.S.A. § 4472(a). Applicants argue that, by definition, there has been no act or decision of the municipal panel, and therefore nothing to appeal, when an application has been "deemed approved." 24 V.S.A. 4464(b)(1). Applicants therefore argue that because Ms. Orlandi filed her cross-appeal before the Court issued a decision on whether their conditional use application was deemed approved, there was no decision for Ms. Orlandi to appeal.[2]

Denying an interested parties' right to appeal under this rationale does not comport with this Court's strict time limits for appeals from municipal panel acts or decisions. See, e.g., Vermont Rules of Environmental Court Proceedings 5(b)(1), 5(b)(2), and 5(f). These time limits are inflexible. Interested persons are therefore entitled to file a notice of appeal in order to preserve the right to appeal and request a stay while the Court addresses matters that bear on the appeal. At the time Ms. Orlandi was required to file her notice of cross-appeal there was a question regarding whether the application had been deemed approved. This issue is, in fact, raised in Applicants' Notice of Appeal in this matter. Ms. Orlandi, an interested person, had a right to cross-appeal and file a Statement of Questions with the Court. See Parts A and B above.

---

[2] The Court has been handling the present matter—Applicants appeal of the DRB's February 2012 decision, Docket No. 34-3-13—and a related matter—Applicants declaratory judgment action asking the Court to find their application was "deemed approved," Docket No. 24-2-13—in a coordinated fashion pursuant to Rule 2(d).

7

## Motion for Summary Judgment

### I.    Summary Judgment Standard

When reviewing a motion for summary judgment, the moving party (here, Ms. Orlandi) bears the burden of demonstrating that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); V.R.E.C.P. 5(a)(2). Both the party claiming that a material fact is undisputed and the party seeking to establish a dispute of material fact must support their assertions with citations to materials in the record. V.R.C.P. 56(c)(1). In addition, the Court will accept as true all factual allegations made in opposition to the motion and give the non-moving party (here, Applicants) the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356 (internal citations omitted); V.R.C.P. 56(c) (laying out summary judgment procedures).

#### A.  Material Facts

As the moving party, Ms. Orlandi bears the burden of demonstrating that there is no genuine dispute as to any material fact. An issue of fact "is material only if it might affect the outcome." N. Sec. Ins. Co. v. Rossitto, 171 Vt. 580, 581 (2000) (mem.) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An assertion that a fact cannot be or is genuinely disputed must be supported by either "a separate and concise statement of undisputed material facts or a separate and concise statement of disputed facts," or a showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.R.C.P. 56(c)(1).

It is undisputed that Applicants seek to develop a gravel extraction operation that will rely on drilling and blasting rock ledge to produce unconsolidated rock and gravel for sale. The issue on summary judgment is a legal question as to whether Applicants project is authorized under the Regulations. Applicants' argue that Ms. Orlandi is not entitled to summary judgment because she failed to support her factual assertions with citations to the material in the record and there exists a dispute of material facts regarding the parties' interpretation of § 564 of the Regulations.

As to the former, Ms. Orlandi's citations to the DRB decision below are sufficient to support her factual allegations. As to the latter, a dispute as to the interpretation of a zoning

bylaw is not a factual dispute. A "fact" is an "actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation." Bennington Hous. Auth. v. Lake, 2012 VT 82, ¶ 9, 192 Vt. 372, 376 (quoting Black's Law Dictionary 628 (8th ed. 2004)). That the parties dispute the interpretation of the Regulation does not render it a question of fact. See In re S. Burlington-Shelburne Highway Project, 174 Vt. 604, 605 (2002) (noting that "[s]tatutory interpretation is a question of law"). The only issue remaining is whether Ms. Orlandi is entitled to a judgment as a matter of law.

**B. Judgment as a Matter of Law**

Ms. Orlandi argues that she is entitled to a judgment as a matter of law because Applicants project, which involves drilling, blasting, and crushing rock ledge or bedrock into gravel for sale, are not authorized under § 564 of the Regulations, and furthermore, that § 240 prohibits any uses not explicitly permitted by the Regulations. Applicants argue that Ms. Orlandi is not entitled to summary judgment under § 564 as a matter of law based on the established cannons of statutory interpretation.

We interpret zoning ordinances according to the general rules of statutory construction. In re Champlain Oil Co. Conditional Use Application, 2014 VT 19, ¶ 7. We will "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance." In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262. Furthermore, as derogations of property rights, any ambiguity in a zoning ordinance must be resolved in favor of the property owner. In re Toor, 2012 VT 63, ¶ 9, 192 Vt. 259.

The Monkton Zoning Regulations do not specifically regulate ledge rock quarries, either by establishing standards for such activities or by making the use category of "rock quarry" a permitted or conditional use in any district. Furthermore, pursuant to § 240, use categories that are "not specifically permitted" under the Regulations, such as "rock quarry," are prohibited unless authorized. The only mention of "gravel" is found in § 564, titled "Extraction of Soil, Sand or Gravel." In establishing permitted uses, § 564 permits "the removal of . . . . gravel for sale . . . . only upon approval of a plan for the rehabilitation of the site by the Planning Commission and after a public hearing." Regulations § 564.

9

By its terms, § 564 does not contemplate the removal of rock or stone materials that require drilling or blasting, such as ledge rock. By its plain language, § 564 authorizes "the removal," but not the creation of, gravel for sale. Applicants allege that by referencing "extraction" in the section title, the Regulation contemplates the creation of gravel, not merely its removal. They offer § 564(5) and (6) to support this assertion. Section 564(5) prohibits "excavation, blasting or stock piling of materials . . . . within two hundred feet of any street or other property line." Section 564(6) prohibits "power-activated sorting machinery or equipment . . . . within three-hundred feet of any street or other property line, and all such machinery shall be equipped with satisfactory dust elimination devices."

It is reasonable to infer from these references that § 564 contemplates the blasting and stockpiling of materials outside a buffer area, and that those materials will be sorted with power-activated machinery or equipment. We cannot infer, however, that these references to excavation, blasting, stock piling, and power-activated sorting machinery or equipment are made with regards to quarrying. While it is undisputed that each activity is a necessary element of a quarrying, we cannot say that by including these elements in § 564 the drafters intended to permit quarrying when the plain language of the words does not support this interpretation. Furthermore, while § 564 addresses some elements necessary for both gravel extraction and quarrying, other elements necessary for quarrying alone, and proposed by Applicants for their quarrying operation, such as crushing or drilling equipment, are absent from the section. This comports with our reading of the plain language of § 564, which explicitly authorizes gravel <u>extraction</u> but not gravel <u>creation</u>.

Furthermore, although gravel is not mentioned in any other section of the Regulations, § 564 states that it was written in accordance with section 4407(8)[3] of title 24, which explicitly differentiates between "sand gravel excavations or soil removal" and quarrying. 24 V.S.A. § 4407(8) (repealed 2003). Because § 564 was written according to a statute that differentiates between gravel extraction and quarrying, and because § 240 expressly prohibits uses not

---

[3] 24 V.S.A. § 4407(8) provided that "[r]egulations governing the operation of sand and gravel extractions" could permissibly require rehabilitation plans and bonds, escrow accounts, or other surety to ensure rehabilitation, but specified that the "provision does not apply to mining or quarrying." The section was repealed by the legislature in 2003.

permitted elsewhere in the Regulations, the creation of gravel for sale is not a permitted use under the Regulations.

Applicants also argue that the words "gravel for sale" in § 564 support a conclusion that the section contemplated the removal of ledge rock to be converted into gravel. They allege that, by its plain language, "gravel for sale" refers to gravel of a particular size but does not limit the scope of the Regulation to naturally existing gravel deposits. Addressing this language, Ms. Orlandi argues that the phrase "for sale" simply modifies the listed resources, limiting the Regulation to the removal and sale of naturally occurring gravel. We find, however, that other than restricting the scope of the Regulation to the removal of gravel for financial gain, the use of the words "for sale" does not inherently modify the language to include the creation of gravel. Certainly gravel can be created, as that is what Applicants propose to do. However, Applicants' interpretation would authorize the permitting of any operation resulting in gravel for sale in any district. This stretches the scope of § 564 beyond its plain and unambiguous language, which applies to the extraction of sand, soil, or gravel and not to the creation thereof.

It is undisputed that Applicants seek to remove ledge rock from the ground and crush it into gravel for sale. Based on its plain language, § 564 only permits the extraction of gravel and not the drilling and blasting of ledge rock. Because § 240 of the Regulations expressly prohibits uses not permitted elsewhere in the Regulations, Applicants' application to drill and blast rock ledge and then crush the rock into unconsolidated gravel for sale must be denied. Ms. Orlandi is therefore entitled to a judgment as a matter of law.

**Conclusion**

For the reasons discussed above, we conclude Applicants are entitled to amend their Statement of Questions, that Ms. Orlandi has standing in this appeal, and that she is entitled to a judgment as a matter of law. Applicants' motion to dismiss for lack of standing is **DENIED** and their motion to amend their statement of questions is **GRANTED**. Ms. Orlandi's motion for

11

summary judgment is **GRANTED**. This concludes the matter before the Court. A Judgment Order accompanies this decision.

Electronically signed on November 07, 2014 at 01:09 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division